United States District Court
Eastern District of Michigan

Tara Miller,

Plaintiff,

v.

Douglas A. Collins, Secretary of Veterans Affairs,

Defendant.

Civil No. 22-12865

Hon. F. Kay Behm
Mag. Judge Kimberly G. Altman

# Defendant's Motion for Summary Judgment

Tara Miller was a probationary employee in the VA's human resources department, where her supervisor was Eric Osterbeck. During her time at the VA, Miller disregarded Osterbeck's basic instructions and wrongfully accessed her coworkers' personnel files. For these plainly legitimate reasons, Osterbeck and his supervisor Eric Gonzales made the only reasonable choice in front of them—to terminate a probationary employee who balked at simple instructions and could not be trusted with access to HR records.

Defendant, by his attorneys Julie A. Beck, Acting United States Attorney for the Eastern District of Michigan, and Christopher J. Doyle, Assistant U.S. Attorney, seek summary judgment under Federal Rule of Civil Procedure 56. The grounds for this motion are set forth more fully in the attached brief.

Under Local Rule 7.1(a)(2)(C), undersigned counsel contacted counsel for Plaintiff and requested but did not obtain concurrence in the relief sought.

Respectfully Submitted,

**Julie A. Beck**
Acting United States Attorney

*/s/ Christopher Doyle*

**Christopher Doyle** (P79376)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9595
christopher.doyle@usdoj.gov

Dated: March 31, 2025

United States District Court
Eastern District of Michigan

Tara Miller,

Plaintiff,

v.

Douglas A. Collins, Secretary of Veterans Affairs,

Defendant.

Civil No. 22-12865

Hon. F. Kay Behm
Mag. Judge Kimberly G. Altman

# Brief in Support of Defendant's Motion for Summary Judgment

## Issues Presented

I. Should the Court grant summary judgment for Defendant on Plaintiff's discrimination claims because there is no evidence of discrimination and the VA terminated Plaintiff for a plainly legitimate reason?

II. Should the Court grant summary judgment for Defendant on Plaintiff's retaliation claims because Plaintiff' did not complain about discrimination before she was terminated and the VA terminated her for a plainly legitimate reason?

III. Should the Court grant summary judgment for Defendant on Plaintiff's hostile work environment claim because Plaintiff fails to establish that she was subjected to severe and pervasive hostility?

IV. Should the Court grant summary judgment for Defendant on Plaintiff's non-selection claims because she failed to administratively exhaust those claims?

# Table of Contents

Index of Authorities ........ iv

Introduction ........ 1

Statement of Material Facts ........ 1

I. The VA hired Miller as an HR Assistant. ........ 1

II. Miller developed disputes with her coworkers that had nothing to do with her race, sex, age, or disability status. ........ 2

III. Miller ignored basic instructions from her supervisor and pushed back against constructive criticism. ........ 5

IV. Miller was aggrieved about not receiving a COVID bonus and wrongfully accessed her coworkers' personnel files to investigate. ........ 6

V. The VA terminated Miller's probationary employment. ........ 8

VI. After her termination, Miller filed an EEO claim and eventually filed this action. ........ 9

Standard ........ 10

Analysis ........ 10

I. Miller fails to establish that she was discriminated against based on her age, race, sex, or disability status. ........ 10

A. Legal Framework ........ 10

B. Miller fails to establish a prima facie discrimination case. ........ 13

C. Miller would fail to show that the VA's legitimate nondiscriminatory reasons for its actions were a pretext for discrimination. ........ 14

II. Miller fails to establish that she was retaliated against for any protected activity. ........ 16

A. Legal Framework ........ 16

B. Miller did not engage in protected activity before her termination. ........ 17

C. Miller's supervisors lacked knowledge of any protected activity. ........ 18

D. Miller was terminated for plainly legitimate reasons. ........ 19

III. Miller fails to establish that she was subjected to a hostile work environment. ....................20
IV. Miller failed to administratively exhaust her claims about non-selection. ....22
Conclusion ....................24
Certification of Service ....................25

# Index of Authorities

## Cases


*Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) .......................................... 24
*Allen v. Highlands Hosp. Corp.*, 545 F.3d 387 (6th Cir. 2008) .............................. 15
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......................................... 10
*Ayala v. Summit Constructors, Inc.*, 788 F. Supp. 2d 703 (M.D. Tenn. 2011) ....... 18
*Barrett v. Whirlpool Corp.*, 556 F.3d 502 (6th Cir. 2009) ..................................... 17
*Bashaw v. Majestic Care of Whitehall, LLC*, 130 F.4th 542 (6th Cir. 2025) .......... 15
*Blizzard v. Marion Tech. Coll.*, 698 F.3d 275 (6th Cir. 2012) (ADEA) ................. 17
*Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304 (6th Cir. 1989) ....... 18
*Boshaw v. Midland Brewing Co.*, 42 F.4th 598 (6th Cir. 2022) ............................. 19
*Brown v. General Servs. Admin.*, 425 U.S. 820 (1976) ......................................... 23
*Burnett v. Tyco Corp.*, 203 F.3d 980 (6th Cir. 2000) ............................................ 21
*Chen v. Dow Chem. Co.*, 580 F.3d 394 (6th Cir. 2009) ......................................... 14
*Clark v. United Parcel Serv., Inc.*, 400 F.3d 341 (6th Cir. 2005) .......................... 21
*Crossley v. Kettering Adventist Healthcare*, No. 23-3346, 2024 WL 338163 (6th Cir. Jan. 30, 2024) ........................................................................................................ 15
*Davis v. City of Clarksville*, 492 F. App'x 572 (6th Cir. 2012) ............................. 19
*Doe v. City of Detroit, Mich.*, 3 F.4th 294 (6th Cir. 2021) ..................................... 21
*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998) .......... 13
*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ........................................... 22
*Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009) ............................................ 12
*Graf v. Morristown-Hamblen Hosp. Ass'n*, No. 2:22-CV-70, 2024 WL 3432385 (E.D. Tenn. July 16, 2024) ...................................................................................... 18
*Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711 (6th Cir. 2006) ............ 20
*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) ............................................. 12
*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) .................................................... 21
*Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321 (6th Cir. 2008) ........................... 22
*Hunter v. Sec'y of the United States Army*, 565 F.3d 986 (6th Cir. 2009) ............. 23
*Johnson v. University of Cincinnati*, 215 F.3d 561 (6th Cir. 2000) ....................... 17
*Kenney v. Aspen Techs., Inc.*, 965 F.3d 443 (6th Cir. 2020) ................................. 19
*Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227 (6th Cir. 1990) .......... 12
*Kuhn v. Washtenaw Cnty.*, 709 F.3d 612 (6th Cir. 2013) ....................................... 20
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............. 10

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .............................. 11, 12
*McFarland v. Henderson*, 307 F.3d 402 (6th Cir. 2002)........................................23
*Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992)........................................13
*Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000) ..................22
*Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521 (6th Cir. 2012)...........10
*Phelps v. Yale Sec., Inc.*, 986 F.2d 1020 (6th Cir. 1993).......................................12
*Phillips v. UAW Int'l*, 854 F.3d 323 (6th Cir. 2017) ............................................21
*Shields v. Sinclair Media III, Inc.*, No. 1:18-CV-593, 2020 WL 3432754 (S.D. Ohio June 23, 2020), report and recommendation adopted, 2021 WL 4472520 (S.D. Ohio Sept. 30, 2021) ..........................................................................15
*Siegner v. Twp. of Salem*, 654 F. App'x 223 (6th Cir. 2016) .................................20
*Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298 (6th Cir. 2016) ..............................21
*Steiner v. Henderson*, 354 F.3d 432 (6th Cir. 2003)..............................................23
*Stewart v. Orion Fed. Credit Union*, 2014 WL 12664812 (W.D. Tenn. Feb. 11, 2014) ..........................................................................18
*Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553 (6th Cir. 2009) .....................16
*Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248 (1981)..................................11
*University of Texas Sw. Med. Ctr. v. Nasser*, 570 U.S. 338 (2013) .......................17
*Warf v. U.S. Dep't of Veterans Affs.*, 713 F.3d 874 (6th Cir. 2013).......................16
*Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463 (6th Cir. 2012) ................ 17, 20
*Williams v. Gen. Motors Corp.*, 187 F.3d 553 (6th Cir. 1999)...............................22
*Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359 (6th Cir. 2010) ...................... 11, 24

**Statutes**

29 U.S.C. § 623(a)(1)..........................................................................11
29 U.S.C. § 623(d) ..........................................................................16
42 U.S.C. § 2000e-3(a) ..........................................................................16
42 U.S.C. § 2000e–5(f)(1) ..........................................................................24

**Regulations**

29 C.F.R. § 1614.105(a)(1)..........................................................................23

**Rules**

Fed. R. Civ. P. 56 ..........................................................................10

## Introduction

During her probationary term of employment with the VA, Tara Miller openly defied simple instructions from her supervisor and wrongfully accessed her coworkers' personnel files. For these patently valid, nondiscriminatory reasons, the VA ended Miller's probationary employment. Nothing in the record supports Miller's vague and conspiratorial allegations of discrimination and retaliation. The Court should grant summary judgment for Defendant.

## Statement of Material Facts

### I. The VA hired Miller as an HR Assistant.

1. In April 2020, Tara Miller began working for the VA as an HR Assistant at the John D. Dingell Medical Center in Detroit, Michigan. (Exhibit 1, Deposition of Miller, 23–24.)

2. Miller was hired to the position subject to a two-year probationary period. (Exhibit 2, Hiring Form.)

3. Miller is an African American woman. She was born in July 1969, making her 50 years old when she was hired. (Exhibit 3, Formal Complaint.)

4. Miller became employed with the VA under a non-competitive hiring process for individuals with disabilities (often referred to as Schedule A). (Exhibit 1, Deposition of Miller, 60.)

5. Eric Osterbeck, a senior manager in the HR department, selected Miller for the position and became her supervisor. (*Id.* at 24.)

6. Osterbeck was also hired under Schedule A. (Exhibit 4, Deposition of Osterbeck, 141–43.) A person hired under Schedule A still needs to be fully qualified for the position sought. (*Id.*)

7. Osterbeck knew that Miller was hired under Schedule A, but he didn't learn what specific disability she had. (*Id.*)

8. Miller alleges that soon after she started at the VA she had a meeting in Osterbeck's office during which he explained that employees could come into his office to grab snacks or candy and then said other employees call him "the candy man." (Exhibit 1, Deposition of Miller, 39–43.)

9. Osterbeck denied telling Miller that anyone calls him "the candy man," and he didn't know Miller made such an allegation until after she was terminated. (Exhibit 4, Deposition of Osterbeck, 111–13, 185.)

## II. Miller developed disputes with her coworkers that had nothing to do with her race, sex, age, or disability status.

10. Miller was expected to work alongside another HR Assistant, Erica Bethany, who is also an African American woman. (Exhibit 1, Deposition of Miller, 105.) Miller does not know whether Bethany has a disability. (*Id.* at 115.)

11. Bethany started working for the VA in 2007. (Exhibit 5, Deposition of Bethany, 24.) She was not a probationary employee when she worked with Miller. (Exhibit 6, Bethany Hiring Form.)

12. Miller and Bethany had a difficult working relationship. (Exhibit 4, Deposition of Osterbeck, 102.)

13. Miller took issue with Bethany's harsh attitude and use of foul language, but she did not think Bethany was discriminating against her based on age, sex, race, or disability status. (Exhibit 1, Deposition of Miller, 32–33.)

14. After several months, the interpersonal tension between Miller and Bethany progressed to the point that Miller wrote a "Report of Contact" documenting her disputes with Bethany and stating that she no longer wanted to "engage in any form of communication with" Bethany. (Exhibit 7, Report of Contact.) Again, the documented problems had nothing to do with Miller's age, race, sex, or disability status. (*Id.*)

15. Similarly, Miller had trouble working with Angela Thompson, a more experienced employee who was tasked with training Miller on certain HR duties. (Exhibit 4, Deposition of Osterbeck, 67, 68, 135–36; Exhibit 1, Deposition of Miller, 37–38.) Thompson is an African American woman close in age to Miller. (Exhibit 8, Thompson Hiring Form.)

16. Miller's acrimony with Thompson eventually interfered with her work performance. For example, after Thompson conducted a training session with Miller, Bethany, and a newer employee named Shavon Render, Miller asked Render to reiterate everything that Thompson taught them during the training. (Exhibit 9, Deposition of Render, 22.)

17. In January 2021, Osterbeck met with Miller to address her dispute with Thompson. (Exhibit 1, Deposition of Miller, 62–63.) Miller asked Osterbeck to arrange a mediation with Thompson. (*Id.*; Exhibit 10, January 13 Email to Osterbeck.)

18. Although the mediation was arranged by a representative from the EEO department, it arose from a dispute about work performance and "disrespectful comments," not from allegations of discrimination based on age, sex, race, or disability status. (Exhibit 11, January 7 Email to Berry.)

19. In this regard, EEO Specialist Zenia Berry testified that Miller's complaints did not appear to arise from alleged discrimination based on race, age, sex, or disability status. (Exhibit 12, Deposition of Berry, 19–20.) Instead, Miller was alleging generally that "her work was being overly scrutinized by her coworkers." (*Id.*)

20. Similarly, Berry testified that Miller alleged Osterbeck was "biased" toward her coworkers in a general sense, as opposed to any bias based on race, sex, age, or disability status. (*Id.* at 20.)

21. The mediation was held on January 26, 2021, and Miller seemed to think the session was productive, explaining to an HR representative that she, Osterbeck and Thompson "were able to communicate after 6 months of conflict," and that she was "going to try to work with the new suggestions that were given to [the team] to implement in the office." (Exhibit 13, January 27 Email to Bukowsky.) But Miller was also dissatisfied with the session because she believed that Osterbeck came to the mediation to support Thompson. (*Id.*)

## III. Miller ignored basic instructions from her supervisor and pushed back against constructive criticism.

22. In January 2021, Osterbeck instructed Miller not to send unnecessary email messages, including "reply all" responses to large group email messages because "everyone receives way too many emails." (Exhibit 14, January 20 Email to Osterbeck.)

23. Days after receiving that instruction, Miller sent a reply-all email in response to a mass email from Osterbeck's supervisor Eric Gonzales. (*Id.*) This email appeared to be the type of unnecessary communication that Osterbeck asked Miller to curtail, with Miller sent a reply-all message in response to a mass email

generally praising the valuable work of VA employees. (*Id.*; Exhibit 4, Deposition of Osterbeck, 138.)

24. When Osterbeck reminded Miller of his instruction about unnecessary reply-all emails, Miller reacted indignantly, stating "Mr. Osterbeck, with all due respect to you: it is my understanding that when an electronic communication is sent to a 'said person, or personnel' that out of courtesy the recipient may respond in a professional manner." (Exhibit 14, January 20 Email to Osterbeck.)

25. Miller ended that message by telling her supervisor, "My apologies, [sic] if I offended you by shar(ing) my voice of approval." (*Id.*)

**IV. Miller was aggrieved about not receiving a COVID bonus and wrongfully accessed her coworkers' personnel files to investigate.**

26. In 2020, the Detroit VA adopted procedures to prevent the spread of COVID-19 at the facility. (Exhibit 4, Deposition of Osterbeck, 119.)

27. As part of this effort, many employees volunteered to work additional hours at a screening desk at the facility's entrance. (*Id.*)

28. Osterbeck received a list of employees he supervised who had "repeatedly worked the screening station" outside of their normal duty hours (*Id.* at 123–24.)

29. Bethany and Thompson were on that list. (*Id.* at 125.) They each received a bonus of $1000. (*Id.* at 122–25.)

30. Miller did not receive a COVID bonus. (Exhibit 1, Deposition of Miller, 124) She testified that she worked at the screening desk once, on July 3, 2020. (*Id.* at 124–25.)

31. On January 21, 2021, Miller accessed the personnel files of Erica Bethany, Angela Thompson, and Eric Osterbeck to determine whether they received COVID bonuses. (*Id.* at 90–100.)

32. When an employee seeks to access personnel files, the VA's software system first displays a warning screen explaining that the user cannot access the system for anything other than authorized, official business purposes. (*Id.* at 100, 101; Exhibit 4, Deposition of Osterbeck, 128.)

33. Although Miller (as an HR employee) had access to the software system containing her coworkers' personnel files, she had no legitimate reason to view or modify them. (Exhibit 1, Deposition of Miller, 102.)

34. After obtaining the information from her coworkers' personnel files, Miller wrote a letter to Dr. Pamela Reeves (who was at that time the Director of the Detroit VA). (Miller Dep 75.)

35. Dr. Reeves was not in Miller's or Osterbeck's chain of command. (Exhibit 4, Deposition of Osterbeck, 107–08.) Osterbeck did not learn of Miller's letter to Dr. Reeves until after Miller was terminated. (*Id.* at 90, 110–113.)

## V. The VA terminated Miller's probationary employment.

36. After Miller objected to Osterbeck's direction about sending reply-all emails, Osterbeck began the process of seeking to terminate Miller's probationary employment by sending a request and supporting materials to Earl Lee in the VA's employee-relations department. (Exhibit 15, January 25 Email to Lee.)

37. Then, on or around February 19, 2021, that request was forwarded to Osterbeck's supervisor (and Miller's second-line supervisor), Eric Gonzales. (Exhibit 4, Deposition of Lee, 91; Exhibit 16, Termination Letter; Exhibit 17, Declaration of Gonzales.)

38. While that request was pending, Angela Thompson told Osterbeck she was concerned that Miller might have accessed her personnel file because Miller addressed Thompson as "Angela Denise Thompson," (i.e., including her middle name). (Exhibit 4, Deposition of Osterbeck, 117; Exhibit 18, February 23 Email to Miller.)

39. Osterbeck then obtained an access log from the personnel-file system, which confirmed that Miller accessed her coworkers' files. (Exhibit 19, OPF Access Report)

40. The next day, Eric Gonzales approved Miller's termination based on her failure to follow directions and unauthorized access of coworkers' personnel files. (Exhibit 17, Declaration of Gonzales.)

## VI. After her termination, Miller filed an EEO claim and eventually filed this action.

41. On March 31, 2021, Miller filed an EEO complaint alleging that she was discriminated against based on her age, race, sex, and disability status, and that she was subjected to sexual harassment. (Exhibit 3, Formal Complaint; Exhibit 20, Notice of Acceptance.)

42. In August 2022, the VA denied Miller's claim, concluding that she failed to establish that she was discriminated against or subjected to a hostile work environment. (Exhibit 21, Final Agency Decision, 18.)

43. Miller filed a complaint in this Court on November 25, 2022. (Complaint, ECF No. 1.) On June 2, 2023, Miller filed a first amended complaint (First Amended Complaint, ECF No. 9) followed shortly by a second amended complaint (Second Amended Complaint, ECF No. 10), which is the operative complaint in this case.

44. The VA responded to the second amended complaint on June 16, 2023. (Answer, ECF No. 11.)

45. The parties conducted discovery between August 2023 and February 2025. (Scheduling Orders, ECF No. 14, ECF No. 36.)

## Standard

"Summary judgment is proper where no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 526 (6th Cir. 2012) (citing Fed. R. Civ. P. 56). "In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## Analysis

### I. Miller fails to establish that she was discriminated against based on her age, race, sex, or disability status.

The VA terminated Miller's probationary employment because she refused to follow her supervisor's basic instructions and hacked into her coworkers' personnel files. These were plainly legitimate, nondiscriminatory reasons for termination. By contrast, Miller offers only vague speculation about discrimination, which crumbles under even minimal scrutiny.

#### A. Legal Framework

Title VII prohibits an employer from discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as in this case, there is no direct evidence of discrimination courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). To establish a claim of discrimination by circumstantial evidence, a plaintiff must demonstrate (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that a similarly-situated employee outside the protected class or classes was treated more favorably. *Id.* at 363 (citing *McDonnell Douglas*, 411 U.S. 792 at 802). If the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but a pretext for discrimination. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

Similarly, the Age Discrimination Enforcement Act prohibits employers from taking adverse employment actions "because of [an] individual's age." 29 U.S.C. § 623(a)(1). A plaintiff bringing an ADEA claim "must prove that age was

a determining factor in the adverse action that the employer took against him or her." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993) (citing *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 299–30 (6th Cir. 1990)). The plaintiff may prove such but-for causation using either direct or circumstantial evidence. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). To analyze ADEA claims based on circumstantial evidence, courts in this circuit apply the *McDonnell Douglas* framework outlined above. *See Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).

The Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 et seq., prohibits discrimination against qualified employees and job applicants with a disability, and requires reasonable accommodation in employment practices for qualified persons with disabilities.[1] Retaliation for protected activity is also prohibited. The standards used to determine if there is a violation of the Rehabilitation Act are the same standards that are used under the Americans with Disabilities Act of 1990. 29 U.S.C. § 791(g) (citing 42 U.S.C. § 12111 et seq., 12201–12204, 12210). The same rights, remedies and procedures applicable in Title VII employment discrimination case against federal defendants apply in cases

---

[1] Miller's second amended complaint does not attempt to state a claim under the Rehabilitation Act, and any disability-discrimination claim should be dismissed on that basis. In the alternative, Miller would also fail to state a claim of disability discrimination.

brought pursuant to Section 501 of the Rehabilitation Act, 29 U.S.C. § 791. 29 U.S.C. § 794a(a)(1).

**B. Miller fails to establish a prima facie discrimination case.**

Miller cannot establish a prima facie case because she fails to identify a similarly situated employee who was treated differently than her. To be "similarly situated" in the disciplinary context, an employee must be similarly situated in all "relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Relevant factors include whether the employee had the same supervisor, was subject to the same standards, and engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Miller argues that Erica Bethany was treated more favorably, but Bethany is not similarly situated to Miller.

With respect to Miller's termination, Bethany is not similarly situated because she did not access her coworkers' personnel files or openly defy simple instructions from her supervisor. Because Bethany did not commit the infractions that formed the basis of Miller's termination, the VA had no similar grounds to terminate Bethany. In addition, Bethany was not a probationary employee. Based on these differentiating circumstances, Bethany is not similarly situated for the

purposes of Miller's termination. *See Mitchell*, 964 F.2d at 583.

With respect to the fact that Miller did not receive a COVID award, Miller cannot make a prima facie case because Angela Thompson and Erica Bethany were not similarly situated to Miller. Eric Osterbeck, who supervised Miller, Thompson, and Bethany at the time, testified that Thompson and Bethany received COVID awards because the facility added their names to a list of employees who on multiple occasions worked the screening station outside of their normal duty hours. Osterbeck did not recall Miller working the screening desk on multiple occasions, like Thompson and Bethany. Again, these meaningful differences make Thompson and Bethany not similarly situated to Miller.

### C. Miller would fail to show that the VA's legitimate nondiscriminatory reasons for its actions were a pretext for discrimination.

Even if Miller could make a prima facie case of discrimination, she would fail to establish that the VA's legitimate reasons for its actions were pretextual.

Plaintiffs typically show pretext in one of three ways: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

Miller offers no evidence that the VA's stated reasons for terminating Miller and not awarding her a COVID bonus were a pretext for discrimination.

Courts have declined to find pretext in similar cases involving breaches of patient and employee confidentiality. *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 399 (6th Cir. 2008) (concluding that plaintiffs failed to show that hospital "acted unreasonably or without an honest belief that patient privacy—an issue that is of paramount concern to healthcare providers and specifically protected by HIPAA—had been violated"); *Crossley v. Kettering Adventist Healthcare*, No. 23-3346, 2024 WL 338163, at *7–*8 (6th Cir. Jan. 30, 2024) (applying honest belief rule where plaintiff accessed patient charts that were not her own); *Shields v. Sinclair Media III, Inc.*, No. 1:18-CV-593, 2020 WL 3432754, at *9 (S.D. Ohio June 23, 2020), report and recommendation adopted, 2021 WL 4472520 (S.D. Ohio Sept. 30, 2021) (noting that employer "could reasonably rely on the sequence of events, the witness statements it obtained, and plaintiff's lack of a valid explanation to conclude that plaintiff had violated company policy by accessing another employee's computer and email account and printing a confidential document that she was not authorized to access").

In addition, "an employer may terminate an employee whose actions undermine the employer's trust." *Bashaw v. Majestic Care of Whitehall, LLC*, 130 F.4th 542, 549 (6th Cir. 2025). Similarly, an employer also "may terminate an employee for creating legal risk," as Miller did here. *Id*. at 550 (concluding that plaintiff did not establish pretext where her surreptitious recording of meetings

created risk of potential breaches of confidential patient information).

Ultimately, Miller cannot show that the VA's actions were "so unreasonable as to be disbelieved." *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 561 (6th Cir. 2009). And no reasonable factfinder could find that they were a pretext for discrimination.

## II. Miller fails to establish that she was retaliated against for any protected activity.

The VA terminated Miller's probationary employment because of serious infractions that any reasonable factfinder would consider grounds for termination. In addition, Miller did not engage in protected activity before she was terminated—although Miller vaguely complained about hostility by her coworkers and supervisor, she never alleged that she was being discriminated against based on her age, race, sex, or disability status.

### A. Legal Framework

Title VII and the ADEA prohibit an employer from retaliating against an employee for asserting her right to be free from discrimination under those statutes. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). To state a retaliation claim, a plaintiff must allege facts showing that (1) she engaged in protected activity, (2) her employer knew about it, (3) her employer took an adverse employment action against her, and (4) the adverse action was causally related to the protected activity. *Warf v. U.S. Dep't of Veterans Affs.*, 713 F.3d 874, 880 (6th Cir. 2013)

(Title VII); *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (ADEA).

The mixed-motive theory is not applicable to retaliation claims, so the complaining party must establish but-for causation. *University of Texas Sw. Med. Ctr. v. Nasser*, 570 U.S. 338, 360 (2013).

**B. Miller did not engage in protected activity before her termination.**

Before her termination, Miller never complained that she was being discriminated against or harassed because of her age, race, sex, or disability status. Therefore, she fails to establish the first element of a prima facie retaliation claim.

"[I]n order to obtain Title VII's retaliation protections, [Plaintiff] must have had 'a reasonable and good faith belief' that the harassing acts [she] was reporting were Title VII violations." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012); *see Johnson v. University of Cincinnati*, 215 F.3d 561, 579–80 (6th Cir. 2000) ("The EEOC has qualified the scope of the opposition clause by noting that the manner of opposition must be reasonable, and that the opposition be based on a 'reasonable and good faith belief that the opposed practices were unlawful.'"); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009) ("A plaintiff must demonstrate that her opposition was reasonable and based on a good-faith belief that the employer was acting in violation of Title VII."). In other words, a "reasonable and good faith belief" is part of the protected conduct element of an

opposition clause retaliation claim. *See Ayala v. Summit Constructors, Inc.*, 788 F. Supp. 2d 703, 721 (M.D. Tenn. 2011) ("[I]t is clear that a reasonableness requirement does apply to the opposition clause."); *Stewart v. Orion Fed. Credit Union*, 2014 WL 12664812, *4 (W.D. Tenn. Feb. 11, 2014) ("Section 2000e-3(a) requires that the Plaintiff's protected conduct be in good faith."); *Graf v. Morristown-Hamblen Hosp. Ass'n*, No. 2:22-CV-70, 2024 WL 3432385, at *3 (E.D. Tenn. July 16, 2024).

In this regard, "a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989).

As Eric Osterbeck and Zenia Berry testified (and Miller herself largely admits) Miller's pre-termination complaints about "harassment" and "hostility" had no apparent connection to any characteristic protected by Title VII, the ADEA, or the Rehabilitation Act. Because Miller had no reasonable basis to believe that she engaged in protected activity under any of these statutes, she fails to establish the first element of a prima facie retaliation claim.

**C. Miller's supervisors lacked knowledge of any protected activity.**

In addition, even if Miller subjectively believed that she was complaining about discrimination based on race, age, sex, or disability status, Miller's

supervisors had no knowledge that she made any such complaint. So Miller also fails to meet the second element of a prima facie retaliation claim.

**D. Miller was terminated for plainly legitimate reasons.**

Miller also fails to establish the fourth element of a prima facie retaliation claim because no reasonable factfinder could conclude that the VA ended Miller's probationary employment in retaliation for her generalized complaints about coworker hostility as opposed to the very apparent and serious infractions she committed.

And even if Miller could make out a prima facie case of retaliation, she would again fail to show that the VA's legitimate, nondiscriminatory reasons were pretextual. *See Boshaw v. Midland Brewing Co.*, 42 F.4th 598, 606 (6th Cir. 2022) (concluding that plaintiff could not establish pretext where employer terminated plaintiff based on honest belief that he missed a mandatory meeting and shift); *see also Davis v. City of Clarksville*, 492 F. App'x 572, 581 (6th Cir. 2012) (holding that employer "defeated any inference of pretext" because it "sufficiently demonstrated a reasonably held belief based on particularized facts" that plaintiff had been untruthful). In this regard, any temporal proximity between Miller's complaints and her termination would not support a finding of pretext. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020) ("Temporal proximity alone generally is not sufficient to establish causation.").

Moreover, after Miller's complaints about her coworkers, the VA learned of an extraordinarily strong intervening reason for her termination—that she had wrongfully accessed her coworkers' personnel files. Such an "intervening legitimate reason" for an employer's action "dispels an inference of retaliation based on temporal proximity." *Wasek*, 682 F.3d at 472; *see Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 628 (6th Cir. 2013).

Ultimately, Miller's "mere personal beliefs, conjecture and speculation" are "insufficient to support an inference of retaliation." *See Siegner v. Twp. of Salem*, 654 F. App'x 223, 230 (6th Cir. 2016) (citing *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006)).

Accordingly the Court should dismiss Miller's retaliation claim.

## III. Miller fails to establish that she was subjected to a hostile work environment.

Miller also fails to establish that she was subjected to a hostile work environment. The alleged "candy man" comment from Osterbeck, even if made, would not even approach the threshold for severe and pervasive harassment needed to support a hostile work environment claim.

To prevail on a hostile work environment claim, a plaintiff must show (1) she is a member of a protected class, (2) she experienced unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment created a hostile work environment, and (5) her employer is liable. *Doe v. City of Detroit,*

*Mich.*, 3 F.4th 294, 300 (6th Cir. 2021). Under the fourth prong, the plaintiff must demonstrate, based on the totality of the circumstances, that the harassing conduct was sufficiently severe or pervasive to alter the terms and conditions of her employment. *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

The Sixth Circuit has set a "relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory." *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017).

For example, in *Clark v. United Parcel Service*, the Sixth Circuit found that there was no hostile work environment where, over the course of two years, a male supervisor told sexual jokes, twice placed a vibrating pager against a female plaintiff's thigh and pulled on her overalls after she told him that she was wearing a thong underneath. 400 F.3d 341, 351 (6th Cir. 2005). The court found that this behavior was "distasteful and boorish" but fell short of "being sufficiently pervasive, hostile, or abusive to support a legal claim of a hostile work environment." *Id*. Similarly, in *Burnett v. Tyco Corp.*, the Sixth Circuit held that a female employee was not subjected to a hostile work environment when over a six-month period her male manager placed a pack of cigarettes inside her tank top and bra strap, and made several lewd jokes, including telling the employee she had "lost [her] cherry." 203 F.3d 980, 981 (6th Cir. 2000). The court concluded that

even though the incident with the cigarettes might even be battery, the conduct as a whole was not sufficiently severe to create a hostile work environment. *Id.* at 984–85. Likewise, in *Morris v. Oldham County Fiscal Court*, the court found there was no objectively hostile work environment where a male supervisor told lewd jokes, made a sexual advance on the female plaintiff during her performance evaluation, referred to her once as "Hot Lips," and made several isolated comments about her appearance. 201 F.3d 784, 790 (6th Cir. 2000).

In general, unwelcome comments or other actions that are not severe or pervasive cannot support a hostile-work-environment claim under Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). And "harassment involving an 'element of physical invasion' is more severe than harassing comments alone." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 334 (6th Cir. 2008) (quoting *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 563 (6th Cir. 1999)).

Against this backdrop, the single, isolated, and apparently innocuous comment alleged by Miller falls well below the "severe or pervasive" threshold. Accordingly, the Court should grant summary judgment on Miller's hostile work environment claim.

## IV. Miller failed to administratively exhaust her claims about non-selection.

Finally, although Miller alleges that the VA denied her "promotion to over 50 vacant positions for which [she] was the most qualified applicant," (Second

Amended Complaint, ECF No. 10, PageID.33), she failed to administratively exhaust any sort of non-selection claim, and such claims are now barred.

Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. General Servs. Admin.*, 425 U.S. 820, 834 (1976). "The right to bring an action under Title VII regarding equal employment [opportunity] in the federal government is predicated upon the timely exhaustion of remedies, as set forth in [the EEOC regulations]." *Hunter v. Sec'y of the United States Army*, 565 F.3d 986, 993 (6th Cir. 2009). "In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" *Steiner v. Henderson*, 354 F.3d 432, 434–35 (6th Cir. 2003) (quoting *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002)).

To properly exhaust a claim, an employee must "initiate contact with a[n] [EEO] Counselor within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *McFarland*, 307 F.3d at 406 (alterations in original) (quoting 29 C.F.R. § 1614.105(a)(1)).

Miller did not raise a non-selection claim during the administrative stage of this case. Accordingly, she failed to exhaust her administrative remedies claims

and the Court should grant summary judgment in favor of Defendant on these claims. *See Younis*, 610 F.3d at 361 ("As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge.") (citing 42 U.S.C. § 2000e–5(f)(1); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)).

**Conclusion**

For these reasons, the Court should grant summary judgment for Defendant and dismiss the complaint.

Respectfully Submitted,

**Julie A. Beck**
Acting United States Attorney

*/s/ Christopher Doyle*

**Christopher Doyle** (P79376)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9595
christopher.doyle@usdoj.gov

Dated: March 31, 2025

## Certification of Service

I hereby certify that on March 31, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which resulted in service on counsel for the other parties to this case.

*\/s/ Christopher Doyle*
**Christopher Doyle** (P79376)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9595
christopher.doyle@usdoj.gov