STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

TARA D MILLER,

Plaintiff, Case No. 2024-207193-NO

Vs. Hon. F. Kay Behn

DENIS McDONOUGH, Secretary of

The Department of Veterans Affair,

Defendants.

__________________________________/

DEPOSITION OF ZENIA BERRY

taken on Thursday, the 27th day of February, 2025 at

1:11 p.m. Via Video Teleconference.

APPEARANCES:

For the Plaintiff: DEWEY MARTIN
Law Offices of Dewey Rick Martin
13900 Woodward Avenue,
Highland Park, MI 48203
(313) 963-1321

For the Defendant: CHRIS DOYLE
Department of Justice
211 W Fort Street
Suite 2001
Detroit, MI 48226
(248) 476-6900

Reported By: DONALD HANDYSIDE
CER 1464
(248) 642-7708

I N D E X


| WITNESS: | PAGE |
|---|---|
| ZENIA BERRY | |
| Direct Exam by Mr. Martin | 4 |
| Cross Exam by Mr. Doyle | 19 |
| Re-direct Exam by Mr. Martin | 21 |


EXHIBITS


| | |
|---|---|
| Exhibits 1 and 2 | 8 |

---

COURT REPORTER: Okay. Standby please. We're now on the record. This is the deposition of Zenia Berry. It's being taken remotely via Zoom. Today is February 27th, 2025. The time is approximately 1:11 p.m. Counsel, please state your appearances for the record.

MR. MARTIN: Dewey Rick Martin, appear on behalf of the plaintiff, Tara Miller

MR. DOYLE: Chris Doyle on behalf of the defendant, secretary of the Department of Veterans Affairs.

COURT REPORTER: Ms. Berry, please raise your right hand. Do you solemnly swear or affirm the testimony you're about to give today will be the truth, the whole truth, and nothing but the truth, so help you God?

**THE WITNESS: Yes, I do.**

COURT REPORTER: Please proceed, Counsel.

MR. MARTIN: Thank you.

(Witness sworn by Notary Public)

DIRECT EXAMINATION

BY MR. MARTIN:

Q Ms. Berry, I want to apologize for the interruption. I had to take care of another matter, and I just want you to know I do respect your time and I apologize for that delay.

**A Appreciate it. Thank you.**

Q You're welcome. Can you please state your full name for the record and date of birth?
**A Zenia Quizette Berry, February 14th, 1988.**
Q Thank you. And can you spell that -- the middle name just for the court reporter so we're certain?
**A Yes. Q-U-I-Z-E-T-T-E.**
Q Yeah, I usually do that to make sure moms don't get upset. We messed up these names. They take a lot of thought. Okay. So --
**A Absolutely.**
Q -- the reason for that name. Okay. Can you please tell me how you're presently employed, Ms. Berry?
**A I am currently employed for the Department of Veteran Affairs, Detroit VA Medical Center.**
Q And in what capacity?
**A I am the equal employment opportunity specialist.**
Q And can you briefly go over your primary job duties? I know the list is probably too long for us to go through right now today, but just your primary day-to-day duties.
**A So, I along with the EEO manager serve as technical and principal advisors on all matters related to EEO, equal employment opportunity, and all of the programs that fall with under or under the EEO program.**
Q Okay. And then give us an example, if a an employee has

a complaint about a supervisor, can they bring that complaint in the VA to you without going on the outside?
**A Yes.**
Q Okay. And there's process, there's procedures, the VA set for procedures so people will understand they could take their problems or issues in-house to the EEO department for hopefully resolution?
**A Yes.**
Q And has that happened from time to time where employees may come to you with complaints about a supervisor or a manager?
**A Yes.**
Q And when you get that complaint, how do you respond procedurally?
**A It depends on the nature of the complaint.**
Q So, let's say it's a complaint against a supervisor for a hostile work environment.
**A Yes.**
Q What do you do?
**A So, with that there is a process in place. When an employee makes a complaint of harassment against a supervisor our office is obligated to ensure that an appropriate management official is made aware of that harassment complaint, and we are also responsible for ensuring that the harassment prevention program is**

**notified of that complaint.**
Q Okay. And as part of that process, contacting the supervisor to get his side or her side to see -- to try and figure out what's going on?
**A In some instances.**
Q And when you -- why do you say in some instances?
**A In some instances it would be a conflict of interest to notify a management official that they've been named as an alleged harasser.**
Q And can you give us and the court example of what that looks like? A conflict of interest, a situation like that.
**A For example, a sexual harassment complaint. Our office would not notify that -- management official that they were named as an alleged sexual harasser. Our responsibility would be to notify an appropriate management official to then address that allegation.**
Q And when you say appropriate, who would that be if a manager is accused of sexual harassment?
**A Usually it would be whoever is in that chain of command that has not been directly named as an alleged harasser.**
Q So it could be the alleged harasser -- harasser's immediate supervisor, correct?
**A In some instances, yes.**
Q Okay. And then tell us what happens next? How do you

get to a resolution?
A Again, there is a process in place to notify an appropriate management official. And they may consult with our office, with other management officials that they may report to, with the Office of General Counsel, the HR, they would consult as the appropriate steps that they would need to take to resolve the allegation that has been made.
Q And are these allegations ever documented?
A Yes.
Q Explain that, the process.
A Any allegation that is received by our office is going to be documented here with our own internal databases as well as the harassment prevention programs database.
MR. MARTIN: Now, I have -- Chris, I have an exhibit that I'd like to mark as exhibit one.
(Plaintiff's Exhibit Number 1 marked for identification)
Let me email it to you right now Chris, and then you could get it to Ms. Berry.
MR. DOYLE: Okay.
MR. MARTIN: Okay. In fact, I'll send you one and two.
MR. DOYLE: Hey, Rick, if you're back, I got them. So I have that up now.
MR. MARTIN: You did?

MR. DOYLE: Yep, I got them up.

MR. MARTIN: Okay. I would like for Ms. Berry to get an opportunity to read Exhibit 1.

MR. DOYLE: Okay. I'll share the screen. Just give me a second. Okay. Should be up now. Can you see that, Zenia?

**THE WITNESS: Yes.**

MR. DOYLE: All right. Up on screen. And then, Rick, were you thinking -- you want the witness to read the whole thing or do you want to walk through it?

MR. MARTIN: Yeah, the first page, I like to give Ms. Berry an opportunity as the short one to take her time there to just read that to get an idea of what this email is about.

MR. DOYLE: All right. So, Zenia, just let me know if you need me to scroll or zoom or anything.

**THE WITNESS: I can see it. Thank you. Okay. I've read that.**

BY MR. MARTIN:

Q And I'm using the email, Ms. Berry, because I know you have a -- unlike some politicians may think, you are very busy, you have a lot of work to do as the EEO specialist --

**A Yes.**

Q -- in trying to successfully run the VA or have a VA

that takes care of the employees and patients, and I know you're dedicated to that and you work hard every day. So in dealing with this particular situation with Ms. Miller, does this email help refresh your recollection that she did contact you regarding complaints in her department?

**A Yes.**

Q And as you stated earlier, you take all complaints seriously, correct?

**A Yes.**

Q And other than the email, you also had telephone conversations with Ms. Miller from time to time, correct?

**A Yes.**

Q And is that the protocol where employees can also call you, they don't have to always do emails, your door's open to have contact and communication?

**A Yes. Correct.**

Q Okay. Have you found that to be helpful to be able to talk to the individual, either in person or over the telephone to get a better understanding idea of what's going on?

**A Yes.**

Q What's your approach, Ms. Berry, in trying to deal with workplace harassment among coworkers or involving

coworkers?
A **Can you give me a little bit --**
Q How do you address that? Yeah, how do you address that?
A **So, when an employee, again, makes allegations of harassment, and they make contact with our office, our whole role is to get resolution for the concern at the lowest possible level. And so there are various methods of addressing the concern depending, again, on the nature of the allegations or concerns that have been presented to our office.**
Q Okay. In Tara Miller's case, she was expressing concern about coworker harassment, correct?
MR. DOYLE: Object to form.
BY MR. MARTIN:
Q This email, does it help reflect -- re -- refresh your recollection that she was expressing concern about coworker harassment?
A **She expressed concerns with behaviors from her coworkers.**
Q She found it serious enough to bring it to your attention, correct? When I say you, I mean the EEO.
A **Yes.**
Q Okay. And we know coworker harassment or problems with coworkers can escalate into a situation that we try to avoid. When I mean that, I mean any kind of physical

contact or abuse, correct?
**A Yes. If left unchecked.**
Q kay. And that's another reason why you take your job seriously, true?
**A Yes.**
Q And do you believe supervisors over coworker complaint play a key role in trying to resolve those complaints and create an atmosphere -- a peaceful working atmosphere? Do you believe supervisors play a key role in that?
MR. DOYLE: Object to form.
**THE WITNESS: Yes.**
BY MR. MARTIN:
Q And do you expect supervisors to be responsive to coworker complaints of coworker harassment?
MR. DOYLE: Object to form.
**THE WITNESS: Yes.**
BY MR. MARTIN:
Q And in Tara Miller's case, she also expressed concern that Mr. Osterbeck was not responsive in addressing or appropriately respond or did not appropriately address her concerns, correct?
MR. DOYLE: Object to form.
**THE WITNESS: I'm sorry, I didn't hear that.**
BY MR. MARTIN:

Q Ms. Miller communicated to you that she also was not satisfied with the way Mr. Osterbeck was addressing her coworker concerns, correct?

**A Yes.**

Q And when you get situations like that where the employees complain about coworker harassment but also the fact that their supervisor is not hailing it, in their opinion, in the appropriate way to resolve it, you take that seriously, don't you?

**A Yes.**

Q And how do you approach those kind of situations where the coworker -- where the employee believes that the co -- that the supervisor is not being responsive? How do you handle that?

**A It depends on the nature of what's being presented to me.**

Q Okay. Not involving sexual harassment, but involving, for instance, in this case, demeaning tone, disrespectful comments, things of that nature?

**A Yes. Again, it depends on that specific individual's case.**

Q Okay. Did you contact or have discussions with Mr. Osterbeck regarding some of the problems or issues raised by Ms. Miller?

**A Yes.**

Q And what was his response to the best of your recollection?
**A I believe he was aware of the concerns and he was addressing them.**
Q That's what he told you, correct?
**A Myself and my supervisor, yes.**
Q And your supervisor was at that time who?
**A Mr. Fred Harris.**
Q Was this an office meeting where he -- where Mr. Osterbeck told you that he was addressing the issue?
**A I cannot recall. It could have been, it could have been a phone conversation. I can't recall exactly the method of the communication.**
Q I understand. Was there more than one communication with Mr. Osterbeck regarding Ms. Miller's complaint to you?
**A Yes.**
Q It got to a point where Ms. Miller started complaining about Mr. Osterbeck himself, correct?
MR. DOYLE: Object to form.
BY MR. MARTIN:
Q In other words, she thought he was biased, correct?
**A Yes.**
MR. DOYLE: He was what, Rick? Sorry, I just didn't catch that last part.

MR. MARTIN: Biased.
MR. DOYLE: All right. Object to form, just for the record.
BY MR. MARTIN:
Q And how did you respond to Ms. Miller's complaint that she believed Mr. Osterbeck was biased?
**A At that time based on the directives we provide the employee with available avenues of redress.**
Q And when you say the directive, what directive, Ms. Berry, are you referring to?
**A VA 5979.**
Q And did you also inform Mr. Osterbeck that you were referring Ms. Miller to another source?
**A I cannot recall if he was informed of that.**
Q But he did know she was complaining about, in her opinion, being biased, correct?
**A To my knowledge, yes.**
MR. DOYLE: Form and foundation.
BY MR. MARTIN:
Q Do you know a Ms. Cynthia or Cindy Bukowski, Ms. Berry?
**A Yes.**
Q Okay. How do you know her?
**A Cindy Bukowski is an HPP intake specialist or was an HPP intake specialist at the harassment prevention program.**
Q Did you have any contact and communications with Ms.

Bukowski discussing Ms. Miller's complaints about harassment and also Mr. Bukow -- Mr. Osterbeck?

**A I cannot recall.**

Q Now, I'd like to direct your attention to Exhibit 2, please, Ms. Berry. And it -- your email begins at the bottom. It's dated January 22nd, 2021 and then it goes on to the next two pages. And I'd like for you to take as much time as you need. We'll take a little break to give you an opportunity to read over that. That's a lot longer email. So why don't we just take a five minute break for you to read that.

COURT REPORTER: We're off the record at 1:37 p.m.

(Off the record)

COURT REPORTER: Back on the record at 1:38 p.m.

MR. MARTIN: Let's go off the record

COURT REPORTER: We're off the record at 1:38 p.m.

(Off the record)

COURT REPORTER: We're back on the record at 1:39 p.m.

BY MR. MARTIN:

Q Okay. So, Ms. Berry, in reference to Exhibit 2, this appears to be an email from you dated January 22nd, 2021 to Eric Osterbeck and Tara Miller, correct?

**A Correct.**

Q And co-copied to yourself, correct?

A Yes.
Q Okay.
A Yes.
Q And the subject -- I'm sorry. The subject's ADR scheduling information. Tell us what is that about, ADR and the scheduling information?
A So this is alternative dispute resolution. This particular email is a automated email that is sent once a mediation has been generated in our mediation database. It gets sent out to the parties of that mediation.
Q And it's to deal with the dispute between the parties, correct?
A Correct.
Q Okay. And the party's named in this email is Angela Thompson, Tara Miller and Eric Osterbeck, correct?
A Yes.
Q And can you tell us who is Wendy Myers-Cromwell?
A Wendy Meyers-Cromwell was a VA certified collateral duty mediator.
Q And what about Carolyn Hannah Ray?
A Also a VA certified collateral duty mediator.
Q So, this is January 22nd, 2021. So, it appears that Ms. -- unfortunately, Ms. Miller's complaint regarding Angela Thompson and Eric Osterbeck had not been resolved

quite yet, correct?

MR. DOYLE: Object to form.

**THE WITNESS: From this email, no, it had not been resolved.**

BY MR. MARTIN:

Q Okay. But you were making every effort to resolve it. Is that fair to say?

**A Yes.**

Q Did you ever have any contact with Dr. Pamela Reeves regarding Ms. Miller's complaint with respect to Eric Osterbeck?

**A No, I did not.**

Q You -- so the people you had contact with with respect to Ms. Miller's complaint against Ms. -- Mr. Osterbeck, her supervisor, were Cindy Bukowski, correct?

**A I do not recall having contact with Cindy Bukowski.**

Q Even by email communication?

**A I do not recall having contact with her, no.**

Q Okay. Who else did you have contact with regarding Ms. Miller's complaint against Mr. Osterbeck?

**A I can only recall my supervisor, Mr. Fred Harris.**

Q Okay. Are you pre -- where are you presently in -- located?

**A I am located at the Detroit VA Medical Center.**

Q Okay. Did you have any contact with Mr. Gerald Rushing

regarding Ms. Miller's complaint against Mr. Osterbeck?
**A I cannot recall, no. I can't recall that.**
Q Okay. I'll pass the witness to you, Chris, if you have any questions.
MR. DOYLE: Okay.

CROSS EXAMINATION

BY MR. DOYLE:
Q Ms. Berry, I have just a couple follow up questions for you.
**A Okay.**
Q The first question is, you were asked some questions earlier about the general procedures for responding to EEO complaints. Do you remember that?
**A Yes.**
Q And do you know whether Mrs. Miller made a complaint that Mr. Osterbeck either discriminated against her or harassed her before she was terminated?
**A I cannot recall.**
Q Okay. Now, there was also a few questions about coworker harassment. Do you remember that?
**A Yes.**
Q Now, as it pertains to Ms. Miller's case, do you recall what the nature of the alleged harassment was from her coworkers?
**A From her coworkers I can recall that she felt her work**

**was being overly scrutinized by her coworkers.**
Q Okay. And do you know whether the alleged harassment by her coworkers was based on any discriminatory reason like her race, age, sex or disability status?
**A No, I do not recall her tying her concerns to any protected activities.**
Q Okay. And then you were also asked questions about whether Mrs. Miller had a complaint that Mr. Osterbeck was biased. Do you remember that?
**A Yes.**
Q Now, my first question about that is, do you know whether she had that complaint or made that complaint before she was terminated as opposed to after she was terminated?
**A I believe it was before.**
Q Okay. And then when you mean -- when we mentioned bias, do you know what the nature of Mrs. Miller's claim that Mr. Osterbeck was biased? What did she mean by that or how did she explain that?
**A From what I recall, the bias that she relayed was that there was favor for her colleagues. Not bias in the sense of protected activities.**
Q Okay. So not necessarily based on race or sex or age or disability status, right?
**A Correct. Yes.**

MR. DOYLE: Okay. Those are all the questions I have. So if there's any follow up, go ahead, Rick.

MR. MARTIN: Okay. Thanks, Chris.

RE-DIRECT EXAMINATION.

BY MR. MARTIN:

Q Ms. Berry, you testified earlier that you believe that the VA EEO department takes complaints seriously, complaints of harassment, discrimination, any form of complaints, coworker harassment, supervisor harassment, seriously, correct?

**A Yes.**

Q What type of punishment can one receive, from your experience, if found engaging in harassment of an employee? What type of punishment can one receive if the VA takes it seriously?

**A So, that is not an area that EEO gets involved in as far as the level of disciplinary or corrective action. That is an HR function.**

Q I understand.

**A They do utilize a table of penalties that has various degrees of punishment, if we want to call it that, or correction.**

Q Uh-huh.

**A Again, it is dependent upon the specific details of that case. It's case by case.**

Q I understand. And that punishment or disciplinary action applies to coworkers and even supervisors or managers if necessary, correct? If appropriate.

**A Correct. Yes.**

Q Okay. No one's above the law. And when I say law, I mean the policy of VA to ensure proper workplace practices that do not involve harassment or discrimination even if it doesn't -- well, let put it this way, harassment even if it doesn't involve discrimination, in other words, just personality harassment, you take that seriously too, correct?

MR. DOYLE: Object to form.

BY MR. MARTIN:

Q In other words, people just may not like each other, don't get along without a racial, sexual component, you would still take it seriously even though it's not a protected class of harassment.

**A Yes.**

Q So you would take it seriously or the EEO take it seriously a supervisor's bias even if it's not based on race, sex, or gender, correct.

**A Can you repeat that?**

Q A supervisor shouldn't be -- a supervisor should not be biased towards any of his subordinates, correct?

**A Correct.**

Q Shouldn't give favorable treatment for any reason to any of the subordinates, correct?
**A Correct.**
Q And if that is done, they could possibly face disciplinary action, true?
**A Yes.**
MR. MARTIN: I have no further question.
MR. DOYLE: All right. I think that's it then.
COURT REPORTER: Deposition conclude. We're off the record 1:49 p.m.

(Deposition concluded at 1:49 p.m.)

STATE OF MICHIGAN )
COUNTY OF WAYNE )

RECORDER'S CERTIFICATE AND NOTARIZATION

I, Donald Handyside, Court Recorder, do hereby certify that on Thursday, February 27, 2025, at 1:11 p.m., there did personally appear before me, Joseph Coleman, a Notary Public, ZENIA BERRY, that he did swear said person to tell the truth and I did then electronically record her testimony, the same being later reduced to typewriting and that the foregoing is a true and accurate transcription of said electronic recording taken at such time and place.

I further certify that I am not related to or employed by any party of this cause or their respective counsel.

DONALD HANDYSIDE (CER 1464)
Notary Public
My Commission Expires: 5/6/2027

### 1

**1** 8:17 9:3
**14th** 5:3
**1988** 5:3
**1:11** 4:5
**1:37** 16:12
**1:38** 16:14,16
**1:39** 16:18
**1:49** 23:10,12

### 2

**2** 16:4,21
**2021** 16:6,22 17:23
**2025** 4:5
**22nd** 16:6,22 17:23
**27th** 4:5

### 5

**5979** 15:11

### A

**Absolutely** 5:10
**abuse** 12:1
**accused** 7:19
**action** 21:17 22:2 23:5
**activities** 20:6,22
**address** 7:17 11:3 12:21
**addressing** 11:8 12:20 13:2 14:4,10
**ADR** 17:4,5
**advisors** 5:22
**Affairs** 4:10 5:14
**affirm** 4:12
**age** 20:4,23
**ahead** 21:2
**allegation** 7:17 8:7,12
**allegations** 8:9 11:4,9
**alleged** 7:9,15,21,22 19:23 20:2
**alternative** 17:7
**Angela** 17:15,25
**apologize** 4:21,23
**appearances** 4:6
**appears** 16:22 17:23
**applies** 22:2
**approach** 10:24 13:11
**appropriately** 12:21
**approximately** 4:5
**area** 21:16
**atmosphere** 12:8,9
**attention** 11:21 16:4
**automated** 17:8
**avenues** 15:8
**avoid** 11:25
**aware** 6:23 14:3

### B

**back** 8:23 16:14,18
**based** 15:7 20:3,23 22:20
**begins** 16:5
**behalf** 4:7,9
**behaviors** 11:18
**believed** 15:6
**believes** 13:12
**Berry** 4:3,11,21 5:3,12 8:19 9:2,12,20 10:24 15:10,20 16:5,21 19:8 21:6
**bias** 20:16,20,21 22:20
**biased** 14:22 15:1,6,16 20:9, 18 22:24
**birth** 5:2
**bit** 11:2
**bottom** 16:6
**break** 16:8,11
**briefly** 5:17
**bring** 6:1 11:20
**Bukow** 16:2
**Bukowski** 15:20,23 16:1 18:15,16
**busy** 9:22

### C

**call** 10:15 21:21
**capacity** 5:15
**care** 4:22 10:1
**Carolyn** 17:21
**case** 11:11 12:19 13:18,21 19:22 21:25
**catch** 14:25
**Center** 5:14 18:24
**certified** 17:19,22
**chain** 7:20
**Chris** 4:9 8:15,18 19:3 21:3
**Cindy** 15:20,23 18:15,16
**claim** 20:17
**class** 22:17
**co-copied** 16:25
**collateral** 17:19,22
**colleagues** 20:21
**command** 7:20
**comments** 13:19
**communicated** 13:1
**communication** 10:17 14:13,

14 18:17

**communications** 15:25

**complain** 13:6

**complaining** 14:18 15:15

**complaint** 6:1,2,13,15,16,21, 24 7:1,13 12:6 14:15 15:5 17:24 18:10,14,20 19:1,15 20:8,12

**complaints** 6:10 10:6,8 12:7, 15 16:1 19:13 21:7,8,9

**component** 22:15

**concern** 11:6,8,11,16 12:19

**concerns** 11:9,18 12:22 13:3 14:3 20:5

**conclude** 23:9

**concluded** 23:12

**conflict** 7:7,11

**consult** 8:3,6

**contact** 10:5,17 11:5 12:1 13:22 15:25 18:9,13,16,18,19, 25

**contacting** 7:2

**conversation** 14:12

**conversations** 10:12

**correct** 7:23 10:9,13,18 11:12, 21 12:1,22 13:3 14:5,19,22 15:16 16:23,24,25 17:13,14, 16 18:1,15 20:25 21:10 22:3, 4,11,21,24,25 23:2,3

**correction** 21:22

**corrective** 21:17

**Counsel** 4:6,16 8:5

**couple** 19:8

**court** 4:2,11,16 5:5 7:10 16:12,14,16,18 23:9

**coworker** 11:12,17,23 12:6,15 13:3,6,12 19:20 21:9

**coworkers** 10:25 11:1,19,24 19:24,25 20:1,3 22:2

**create** 12:8

**CROSS** 19:6

**Cynthia** 15:20

**D**

**database** 8:14 17:10

**databases** 8:13

**date** 5:2

**dated** 16:6,22

**day** 10:3

**day-to-day** 5:19

**deal** 10:24 17:12

**dealing** 10:3

**dedicated** 10:2

**defendant** 4:9

**degrees** 21:21

**delay** 4:24

**demeaning** 13:18

**department** 4:10 5:13 6:7 10:6 21:7

**dependent** 21:24

**depending** 11:8

**depends** 6:15 13:15,20

**deposition** 4:3 23:9,12

**details** 21:24

**Detroit** 5:14 18:24

**Dewey** 4:7

**direct** 4:19 16:4

**directive** 15:9

**directives** 15:7

**directly** 7:21

**disability** 20:4,24

**disciplinary** 21:17 22:1 23:5

**discriminated** 19:16

**discrimination** 21:8 22:8,10

**discriminatory** 20:3

**discussing** 16:1

**discussions** 13:22

**dispute** 17:7,12

**disrespectful** 13:19

**documented** 8:9,13

**door's** 10:16

**Doyle** 4:9 8:20,23 9:1,4,8,15 11:13 12:11,16,23 14:20,24 15:2,18 18:2 19:5,7 21:1 22:12 23:8

**duties** 5:17,20

**duty** 17:19,22

**E**

**earlier** 10:8 19:12 21:6

**EEO** 5:21,22,24 6:6 9:22 11:21 19:13 21:7,16 22:19

**effort** 18:6

**email** 8:18 9:14,20 10:4,11 11:15 16:5,10,22 17:8,15 18:3,17

**emails** 10:16

**employed** 5:12,13

**employee** 5:25 6:21 11:4 13:12 15:8 21:14

**employees** 6:9 10:1,15 13:6

**employment** 5:16,23

**engaging** 21:13

**ensure** 6:22 22:6

**ensuring** 6:25

**environment** 6:17

**equal** 5:16,22

**Eric** 16:23 17:16,25 18:10

**escalate** 11:24

**EXAMINATION** 4:19 19:6 21:4
**exhibit** 8:16,17 9:3 16:4,21
**expect** 12:14
**experience** 21:13
**explain** 8:11 20:19
**expressed** 11:18 12:19
**expressing** 11:11,16

F

**face** 23:4
**fact** 8:21 13:7
**fair** 18:7
**fall** 5:24
**favor** 20:21
**favorable** 23:1
**February** 4:4 5:3
**felt** 19:25
**figure** 7:4
**follow** 19:8 21:2
**form** 11:13 12:11,16,23 14:20 15:2,18 18:2 21:8 22:12
**found** 10:19 11:20 21:13
**foundation** 15:18
**Fred** 14:8 18:21
**full** 5:1
**function** 21:18

G

**gender** 22:21
**general** 8:5 19:12
**generated** 17:9
**Gerald** 18:25
**get along** 22:15
**give** 4:13 5:25 7:10 9:5,11 11:2 16:9 23:1
**God** 4:14

H

**hailing** 13:7
**hand** 4:12
**handle** 13:14
**Hannah** 17:21
**happened** 6:9
**harassed** 19:17
**harasser** 7:9,15,21,22
**harasser's** 7:22
**harassment** 6:21,24,25 7:13, 19 8:14 10:25 11:5,12,17,23 12:15 13:6,17 15:24 16:2 19:20,23 20:2 21:8,9,13 22:7, 9,11,17
**hard** 10:2
**Harris** 14:8 18:21
**hear** 12:24
**helpful** 10:19
**Hey** 8:23
**hostile** 6:17
**HPP** 15:23
**HR** 8:6 21:18

I

**idea** 9:13 10:21
**identification** 8:17
**in-house** 6:6
**individual** 10:20
**individual's** 13:20
**inform** 15:12
**information** 17:5,6
**informed** 15:14
**instance** 13:18
**instances** 7:5,6,7,24
**intake** 15:23,24
**interest** 7:7,11
**internal** 8:13
**interruption** 4:21
**involve** 22:7,9
**involved** 21:16
**involving** 10:25 13:17
**issue** 14:10
**issues** 6:6 13:23

J

**January** 16:6,22 17:23
**job** 5:17 12:3

K

**kay** 12:3
**key** 12:7,9
**kind** 11:25 13:11
**knowledge** 15:17

L

**law** 22:5
**left** 12:2
**level** 11:7 21:17
**list** 5:18
**located** 18:23,24
**long** 5:18
**longer** 16:10
**lot** 5:8 9:22 16:9
**lowest** 11:7

M

**made** 6:23 8:8 19:15 20:12

**make** 5:7 11:5

**makes** 6:21 11:4

**making** 18:6

**management** 6:23 7:8,14,17 8:3,4

**manager** 5:21 6:11 7:19

**managers** 22:3

**mark** 8:16

**marked** 8:17

**Martin** 4:7,17,20 8:15,21,25 9:2,11,19 11:14 12:13,18,25 14:21 15:1,4,19 16:15,20 18:5 21:3,5 22:13 23:7

**matter** 4:22

**matters** 5:22

**mediation** 17:9,11

**mediator** 17:20,22

**Medical** 5:14 18:24

**meeting** 14:9

**mentioned** 20:16

**messed** 5:8

**method** 14:12

**methods** 11:7

**Meyers-cromwell** 17:19

**middle** 5:4

**Miller** 4:8 10:4,12 13:1,24 14:18 15:13 16:23 17:16 19:15 20:8

**Miller's** 11:11 12:19 14:15 15:5 16:1 17:24 18:10,14,20 19:1,22 20:17

**minute** 16:10

**moms** 5:7

**Myers-cromwell** 17:18

N

**named** 7:8,15,21 17:15

**names** 5:8

**nature** 6:15 11:9 13:15,19 19:23 20:17

**necessarily** 20:23

**Notary** 4:18

**notified** 7:1

**notify** 7:8,14,16 8:2

**Number** 8:17

O

**Object** 11:13 12:11,16,23 14:20 15:2 18:2 22:12

**obligated** 6:22

**office** 6:22 7:13 8:4,5,12 11:5,10 14:9

**official** 6:23 7:8,14,17 8:3

**officials** 8:4

**one's** 22:5

**open** 10:17

**opinion** 13:8 15:16

**opportunity** 5:16,23 9:3,12 16:9

**opposed** 20:13

**Osterbeck** 12:20 13:2,23 14:10,15,19 15:6,12 16:2,23 17:16,25 18:11,14,20 19:1,16 20:8,18

**overly** 20:1

P

**p.m.** 4:5 16:12,14,16,19 23:10,12

**pages** 16:7

**Pamela** 18:9

**part** 7:2 14:25

**parties** 17:10,12

**party's** 17:15

**pass** 19:3

**patients** 10:1

**peaceful** 12:8

**penalties** 21:20

**people** 6:5 18:13 22:14

**person** 10:20

**personality** 22:10

**pertains** 19:22

**phone** 14:12

**physical** 11:25

**place** 6:20 8:2

**plaintiff** 4:8

**plaintiff's** 8:17

**play** 12:7,9

**point** 14:18

**policy** 22:6

**politicians** 9:21

**possibly** 23:4

**practices** 22:7

**pre** 18:22

**presented** 11:10 13:15

**presently** 5:12 18:22

**prevention** 6:25 8:14 15:24

**primary** 5:17,19

**principal** 5:22

**problems** 6:6 11:23 13:23

**procedurally** 6:14

**procedures** 6:4,5 19:12

**proceed** 4:16

**process** 6:4,20 7:2 8:2,11

**program** 5:24 6:25 15:24

**programs** 5:23 8:14

**proper** 22:6

**protected** 20:6,22 22:17

**protocol** 10:15

**provide** 15:7

**Public** 4:18

**punishment** 21:12,14,21 22:1

**put** 22:8

**Q**

**Q-U-I-Z-E-T-T-E** 5:6

**question** 19:11 20:11 23:7

**questions** 19:4,8,11,19 20:7 21:1

**Quizette** 5:3

**R**

**race** 20:4,23 22:21

**racial** 22:15

**raise** 4:11

**raised** 13:24

**Ray** 17:21

**RE-DIRECT** 21:4

**read** 9:3,9,13,18 16:9,11

**reason** 5:11 12:3 20:3 23:1

**recall** 14:11,12 15:14 16:3 18:16,18,21 19:2,18,22,25 20:5,20

**receive** 21:12,14

**received** 8:12

**recollection** 10:5 11:16 14:2

**record** 4:3,6 5:2 15:3 16:12, 13,14,15,16,17,18 23:10

**redress** 15:8

**Reeves** 18:9

**reference** 16:21

**referring** 15:10,13

**reflect** 11:15

**refresh** 10:4 11:15

**related** 5:22

**relayed** 20:20

**remember** 19:13,20 20:9

**remotely** 4:4

**repeat** 22:22

**report** 8:5

**reporter** 4:2,11,16 5:5 16:12, 14,16,18 23:9

**resolution** 6:7 8:1 11:6 17:7

**resolve** 8:7 12:7 13:8 18:6

**resolved** 17:25 18:4

**respect** 4:23 18:10,13

**respond** 6:13 12:21 15:5

**responding** 19:12

**response** 14:1

**responsibility** 7:16

**responsible** 6:24

**responsive** 12:14,20 13:13

**Rick** 4:7 8:23 9:9 14:24 21:2

**role** 11:6 12:7,9

**run** 9:25

**Rushing** 18:25

**S**

**satisfied** 13:2

**scheduling** 17:5,6

**screen** 9:4,8

**scroll** 9:16

**scrutinized** 20:1

**secretary** 4:10

**send** 8:21

**sense** 20:22

**serve** 5:21

**set** 6:5

**sex** 20:4,23 22:21

**sexual** 7:13,15,19 13:17 22:15

**share** 9:4

**short** 9:12

**side** 7:3

**situation** 7:11 10:3 11:24

**situations** 13:5,11

**solemnly** 4:12

**source** 15:13

**specialist** 5:16 9:23 15:23,24

**specific** 13:20 21:24

**spell** 5:4

**Standby** 4:2

**started** 14:18

**state** 4:6 5:1

**stated** 10:8

**status** 20:4,24

**steps** 8:6

**subject** 17:4

**subject's** 17:4

**subordinates** 22:24 23:2

**successfully** 9:25

**supervisor** 6:1,10,16,22 7:3, 23 13:7,13 14:6,7 18:15,21 21:9 22:23

**supervisor's** 22:20

**supervisors** 12:6,9,14 22:2

**swear** 4:12

**sworn** 4:18

**T**

**table** 21:20

**takes** 10:1 21:7,15

**talk** 10:20

**Tara** 4:8 11:11 12:19 16:23 17:16

**technical** 5:21

**telephone** 10:11,21

**terminated** 19:17 20:13,14

**testified** 21:6

**testimony** 4:12

**thing** 9:10

**things** 13:19

**thinking** 9:9

**Thompson** 17:16,25

**thought** 5:9 14:22

**time** 4:5,23 6:9 9:13 10:12 14:7 15:7 16:8

**today** 4:4,13 5:19

**told** 14:5,10

**tone** 13:18

**treatment** 23:1

**true** 12:4 23:5

**truth** 4:13,14

**tying** 20:5

**type** 21:12,14

**U**

**Uh-huh** 21:23

**unchecked** 12:2

**understand** 6:5 14:14 21:19 22:1

**understanding** 10:21

**unlike** 9:21

**upset** 5:8

**utilize** 21:20

**V**

**VA** 5:14 6:2,4 9:25 15:11 17:19,22 18:24 21:7,15 22:6

**Veteran** 5:13

**Veterans** 4:10

**W**

**walk** 9:10

**Wendy** 17:18,19

**words** 14:22 22:10,14

**work** 6:17 9:22 10:2 19:25

**working** 12:8

**workplace** 10:25 22:6

**Z**

**Zenia** 4:3 5:3 9:6,15

**zoom** 4:4 9:16