Ex. 4

Curr Psychiatry Rep (2015) 17:54
DOI 10.1007/s11920-015-0596-7

MILITARY MENTAL HEALTH (CH WARNER, SECTION EDITOR)

# Sexual Assault in the Military

Carl Andrew Castro[1] · Sara Kintzle[1] · Ashley C. Schuyler[1] · Carrie L. Lucas[1] · Christopher H. Warner[2]

© Springer Science+Business Media New York 2015

**Abstract** Military sexual assault is a pervasive problem throughout the military services, despite numerous initiatives to end it. No doubt the military's lack of progress stems from the complexity of sexual assaults, yet in order to develop effective strategies and programs to end sexual assault, deep understanding and appreciation of these complexities are needed. In this paper, we describe the root causes and numerous myths surrounding sexual assault, the military cultural factors that may unintentionally contribute to sexual assault, and the uncomfortable issues surrounding sexual assault that are often ignored (such as the prevalence of male sexual assault within the military). We conclude by offering a broad, yet comprehensive set of recommendations that considers all of these factors for developing effective strategies and programs for ending sexual assault within in the military.

**Keywords** Sexual assault · Root causes · Military culture · Myths of sexual assault

This article is part of the Topical Collection on *Military Mental Health*

✉ Carl Andrew Castro
carl.castro@usc.edu

Sara Kintzle
kintzle@usc.edu

Ashley C. Schuyler
schuyler@usc.edu

Carrie L. Lucas
carriell@usc.edu

Christopher H. Warner
christopher.h.warner.mil@mail.mil

1 School of Social Work, Center for Innovation and Research on Veterans and Military Families, University of Southern California, 1150 South Olive, Suite 1400, Los Angeles, CA 90015-2211, USA

2 Fort Hood, Killeen, TX 76544, USA

## Introduction

Sexual assault remains a persistent problem in the military, with an estimated 20,000 active duty service members experiencing unwanted sexual contact in 2014 [1•], and sexual assaults even occurring in combat environments [2]. Estimates of sexual assaults that occur during military service range from 9.5 to 43 % among women and 1–12 % among men [3]. In the most recent survey of sexual assault in the military, 4.9 % of active duty women and 1.0 % percent of active duty men reported being sexually assaulted within the past year [1•]. For the US general population, the rates of sexual assault have been estimated at 28–33 % of females and 12–18 % of males [4]. For female undergraduates at a 4-year college or university, the rates of sexual assault have been estimated at nearly 16 % before entering college and 19 % after entering college [5]. The rates of sexual assault prior to entering the military have been reported as 30 % among women and 6 % among men, although estimates among military samples can range from 15–49 to 1.5–22.5 %, respectively [3, 6]. Thus, the problem of sexual assault in the military mirrors the problem of sexual assault in the general US population and worldwide [7, 8].

Sexual assault has been defined by the Department of Defense (DoD) as, "Intentional sexual contact characterized by use of force, threats, intimidation, or abuse of authority or when the victim does not or cannot consent. The term includes a broad category of sexual offenses consisting of the following specific Uniform Code of Military Justice (UCMJ) offenses: rape, sexual assault, aggravated sexual contact, abusive sexual contact, nonconsensual sodomy (forced oral or anal sex), or attempts to commit these acts" [9]. Thus, acts of sexual assault can range from unwanted sexual contact to rape. To obtain a conviction for sexual assault, two things must be proven: the behavior or action must be shown to have occurred and the

Published online: 16 May 2015

behavior must be shown to have occurred without consent. Not surprisingly, it is this latter aspect of sexual assault that has been shown to be difficult to prove in both military and civilian courts [10], with conviction rates in the military of 10 % or less [11, 12•].

The impact of sexual assaults on victims can be devastating, affecting their psychological and physical health, military career, and success once leaving the military. Sexual assaults are a major contributing cause to post-traumatic stress disorder (PTSD) in female service members and veterans [13, 14]. Depression, substance abuse, and eating disorders likewise have been linked to sexual assault in military and civilian populations [15–19]. A wide range of medically unexplained physical symptoms have also been associated with sexual assault [17, 19–21]. Sexual assaults are a major reason that some female service members leave the military [22, 23]. As a result of military-related sexual trauma, many female veterans struggle transitioning back into civilian life, with some ending up homeless [19, 22, 24].

Unlike the vast majority of militaries around the world, the US military has become more transparent about the rates of sexual assault among its service members and is working towards identifying solutions to end sexual assaults within the military. The US military's focus on ending sexual assault is important because it recognizes the need to protect the safety and health of all of its service members, as well as the impact that sexual assault has on the military readiness of the force. Thus, ending sexual assault in the military is necessary to safeguard human rights, address health care concerns, and ensure military readiness.

To develop effective prevention and early interventions and to increase the conviction rates of perpetrators of sexual assault, discussions around this topic must address the complexity of sexual assaults. The purpose of this article is to begin an open dialogue around the societal, cultural, and military factors that must be acknowledged before effective strategies to combat sexual assault can be implemented. First, a description of the root causes and myths of sexual assault is presented. Second, an exploration of the military cultural factors which may contribute to a culture of sexual harassment and sexual assault is described. Third, the authors present a candid discussion of the uncomfortable issues of sexual assault (such as male victims of sexual assault, false reports, and many others) that are often ignored in talking about sexual assault. Finally, as it is only by considering all of these factors that effective strategies will be developed to end sexual assaults, recommendations for moving forward are provided.

## Root Causes of Sexual Assault

Numerous theories and hypotheses about the causes of sexual assault have been offered, many of which are not mutually exclusive. In this section, the most often discussed root causes of sexual assault are discussed as they pertain to the military, yet it must be emphasized that the causes of sexual assault discussed here are not unique to the military and are applicable to broader civilian communities as well.

**Gender Stereotypes** The military, like most large organizations around the world, is characterized by a patriarchal structure dominated by values such as formality, rank, leadership, loyalty, camaraderie, and emotional control. Importance is placed on masculine ideals, encouraging notions of dominance, aggression, self-sufficiency, and risk-taking [25, 26]. The military's history of male-only peer group bonding can foster hyper-masculinity, which views masculine interactions in terms of competition, dominance, and control [25]. The power differential between men and women in the military, due to its male-dominated leadership and structure, plays an important role in sexual misconduct [3]. More traditional and hyper-masculine beliefs and negative attitudes towards women have been linked with acceptance and perpetration of sexual harassment and assault [3, 25, 27–29]. In addition, the culture of homophobia in the military enhances the risk of sexual violence. Fear and stigma attached to being labeled or identified as homosexual are used as power and control tactics and often prevent victims of assault, particularly male victims, from reporting [25].

Hyper-masculine men may feel threatened by competent women, as well as threatened by men considered weak or effeminate, and thus feel the need to constantly prove their masculinity through the use of sexual language and behavior. Women in the military have reported feeling scrutinized and watched by men, judged as less competent, and subjected to jealousy and anger [30•]. The use of sexualized and gendered language within the military—including calling recruits "girls" or "faggots" as a form of motivation and various types of military slang—contributes to further psychological distance and objectification [25].

**Historical and Religious Influence** Historically in warfare, women have often been regarded as rewards for the winning side or a method of maintaining morale—sexual resources to which men are entitled [25, 31, 32]. Some countries have actively provided sex workers to US military personnel as a token of friendship [25]. The ability to rape and kill has been viewed as an indication of power, and the military's traditional acceptance of violence as a valid method of achieving goals may create an environment conducive to perpetrating behavior [25].

**Past Personal Experience** Past experiences of sexual trauma have been related to sexual assault victimization. Rates of childhood and adolescent sexual abuse among military service members are often greater than among civilians, ranging from

15 to 49 % of women and 1.5–22.5 % of men [3]. According to the 2012 data from the DoD, 30 % of female and 6 % of male service members reported pre-military sexual assault [6]. Research among military samples has indicated that women with a history of pre-military sexual assault are 2–5 times more likely to be re-victimized during military service [33, 34]. A common theme in theories of re-victimization is that it is not the abuse itself that contributes to risk, but the emotional and behavioral consequences of the initial abuse [35]. These may include feelings of self-blame, emotional dysregulation or numbing, and interpersonal difficulties [36–39].

**Entitlement** A hyper-masculine perspective may endorse men's feelings of entitlement to regular sex; this sense of entitlement has been described as the link between masculinity and rape-related attitudes and behaviors [25, 40]. One sexual harassment victim described feeling perceived by some men as though participating in sexual activities was part of her obligation as a woman in the army [41]. Among a sample of male college students, endorsements of patriarchal entitlement (e.g., "a woman should submit to her husband's decision") or sexual entitlement (e.g., "I think people have the right to do anything they please in sex") were related to sex role stereotyping, hostility towards women, and rape myth acceptance [42].

Compounding the sense of entitlement inherent in hyper- and traditional views of masculinity is the military's emphasis on objectification. Male and female soldiers are taught to objectify other humans and limit their empathy in an effort to make killing easier. However, when this objectification is applied to fellow service members, it may contribute to an enhanced sense of entitlement as well as psychological and social distancing which can make sexual assault easier to perpetrate and justify [25, 43].

**Alcohol** It is well known that the use of alcohol is pervasive in the military, as well as among many cultures. Within both military and civilian contexts, alcohol use has been linked to an increased risk of sexual violence. Data from a 2005 DoD report indicated that alcohol was involved in 58 % of sexual assault cases from the Military Academy and 57 % of reported cases from the Naval Academy [44]. In fiscal year 2013, approximately half of all unrestricted reports of sexual assault made within the army involved alcohol [11]. Among college samples, approximately half of sexual assaults occur when the perpetrator, the victim, or both have consumed alcohol, with estimates ranging from 40 to 75 % [45•]. Alcohol can lead to increases in sexual desire, risk taking, and aggression, as well as a misinterpretation of victim responses as an invitation for sex. Various contextual and individual factors may further exacerbate the impact of alcohol, including feelings of sexual dominance and hostility towards women, misperceptions of victims' sexual intentions, and perceived peer approval for forced sex [45•].

**Cultural Acceptance** Many victims, both military and civilian, describe the response to and aftermath of sexual assault as more painful than the assault itself [46, 47]. A rigid chain of command and a perceived "code of silence" can create an environment in which victims do not report or seek help because they believe nothing will be done or they fear retaliation or negative repercussions [48]. According to the most recent DoD data from fiscal year 2014, 62 % of women who reported sexual assault experienced retaliation, a figure identical to that from 2013. Specifically, 53 % of victims reported social retaliation, 32 % reported professional retaliation, 35 % reported administrative/adverse action, and 11 % reported receiving a punishment [12•]. Of the more than 5900 reports of sexual assault in the military in fiscal year 2014, less than one third of the perpetrators received any kind of legal or administrative action for substantiated charges [12•]. Rates of conviction continue to be low—less than 10 % of reported assaults saw a conviction in 2012–2014 [11, 12•, 49]. Recent data from the US Attorneys' Office indicates that other major offenses—including those related to drugs, organized crime, and white collar crime—see conviction rates of over 90 % [50], highlighting the inherent difficulty of obtaining convictions for sexual assault.

Sexual assault victims in both military and civilian contexts face blame, dismissal, invasions of privacy, and incredulous questioning, even when it is clear that the assault occurred [51–53]. A 2005 study indicated important differences in retaliatory behaviors within military and civilian environments [52]. Discouraging a victim from filing a legal report and refusing to take a victim's report were substantially more common in the military, as was the presence of legal officials telling victims the incident was not serious enough to warrant attention. There have been reports over the years of the military utilizing personality and adjustment disorder diagnoses as a way of expediting discharges of victims of sexual assault, particularly among male victims of sexual assault [54–57]. If substantiated, these forms of secondary victimization may increase the risk of PTSD symptomology among victims [52], as well as perpetuate a culture of victim-blaming and acceptance of sexual discrimination and misconduct as the military norm.

## Myths of Sexual Assault

Myths are beliefs people have that are not true. In the area of sexual assault and harassment, there are literally hundreds of myths (see Table 1 for some of the most common myths of sexual assault/harassment). Most sexual assault/harassment myths are completely false (*Veil of Ignorance* myths), consisting of no facts whatsoever such as "only women can

**Table 1** Categories of sexual assault/rape and sexual harassment myths

| |
|---|
| Veil of ignorance: |
| Only women are assaulted, not men |
| If a man was sexually assaulted, then he is a homosexual |
| If a man was sexual assaulted, then he portrayed himself as gay |
| Real men cannot be sexually assaulted |
| People who commit sexual assaults are of certain races or backgrounds |
| People who offend are evidently evil or appear different than others |
| Only women are sexually harassed/assaulted in the military, not men |
| All perpetrators are male |
| Sexual harassment is less of a problem these days |
| Policies and legislation on sexual harassment make normal flirtation a crime |
| It is only sexual harassment if it happens more than once |
| Most "harassment" is minor, harmless flirtation; harassment is over-exaggerated |
| Sexual harassment is only present when someone has power over another individual |
| Sexual harassment occurs between a man and a woman |
| Sexual harassment is only verbal |
| No evidence: |
| It must have been consensual since there are no bruises or other physical evidence of assault |
| She would have resisted if she really didn't want to have sex |
| Since she/he became aroused she/he must have wanted it |
| If she was really raped, she would have reported it immediately |
| She is too ugly/fat for someone to want to rape her |
| If she was raped why was she talking to him the next day? |
| She wasn't raped, she is acting as if nothing happened, her distress is not apparent |
| Revenge: |
| She is only saying that she was raped to get out of trouble for her poor work performance |
| People often falsely accuse others of sexual assault |
| Women make up stories about sexual harassment/assault as a form of revenge towards a supervisor/colleague |
| She is only saying she was raped to cover up her infidelity |
| She is only saying she was raped because she regrets having slept with him |
| She is only saying she was raped so she can get reassigned to another unit/installation |
| She is only saying she was sexually assaulted so she can get out of deploying/go home early |
| Her fault: |
| She asked for it by dressing that way, flirting |
| She is new to the unit (Can we believe her? Can we trust her?) |
| She should have stayed with her friends |
| Her friends should have protected her |
| She shouldn't have gone to that place |
| She shouldn't have gone to his room or apartment alone |
| She had sex with him before |
| She sleeps with everyone |
| She shouldn't have been drinking |
| She is so attractive/sexy/young |
| Angel mirage: |
| He couldn't have sexually assaulted her, he is one of my best troops/top performer |
| Why would he sexually assault her? He is so good looking he can get women without assaulting them |
| He couldn't have sexually assaulted her/him, he has a family/significant other |
| Why would he sexually assault anyone?, He is getting ready to be promoted |
| He wouldn't have sexually assaulted her because he is a Christian/religious |
| S/he couldn't have done anything wrong, s/he is so nice and likeable |
| S/he couldn't have done anything wrong, s/he is a positive role model in our community (e.g., coaches little league, volunteers, etc.) |
| He couldn't help himself because of his sex drive (due to hormones) |

be sexually assaulted, not men." Many myths of sexual assault/harassment often contain logical errors in thinking (*No Evidence* myths), such as "if she was really raped then she would have reported it." Being raped and reporting the rape are two independent events; one does not imply the existence or absence of the other. The most insidious myths, however, contain some elements of facts (*Revenge* myths): "people often falsely accuse others of sexual assault." While it is true that there are false accusations of sexual assault, in nearly 90 % of the cases, the accusation is not false.

The most popular sexual assault/harassment myths involve blaming the victim (*Her Fault* myths), which tend to consist of errors in logical thinking, while comprising some element of fact; for example, "she shouldn't have been drinking." While a victim of sexual assault may have been drinking, how does drinking entitle one to be sexually assaulted? Likewise, perpetrators of sexual assault are often believed over the victim due to *Angel Mirage* myths, which also consist of logical errors in thinking, as well as some elements of facts, such as "he couldn't have sexually assaulted her because he is one of my best performers." It is possible to be the best troop in the unit and be a sexual perpetrator—the two facts are independent of each other.

The best approach to eradicating the myths of sexual harassment and assault that are based on ignorance, half-truths, and faulty thinking is through education and the improvement of critical thinking skills. Such skills training and education should be a central part of all sexual assault prevention training.

## Military Culture Factors Related to Sexual Assault and Harassment

There are many aspects of the military culture that can contribute directly or indirectly to creating or sustaining a cultural

environment where sexual assaults can occur and thrive. While many of these cultural aspects are inherent in the military, others are less so. Those aspects of the military culture that can create an environment conducive to sexual harassment and assault are important to understand if effective prevention and early intervention initiatives are to be successful. In this section, we identify some of the more salient features of the military culture that should be especially noted for the development of sexual assault prevention efforts.

**Value on Performance** Individual and team performance is valued by the military because they lead to successful mission accomplishment. Placing a premium value on performance can easily result in leaders dismissing or minimizing claims of sexual harassment or sexual assault when the accused is a high performer or when the accuser is a low performer. This is particularly troubling when a perpetrator of sexual assault deliberately seeks out a fellow service member whom they know to be viewed as a substandard performer by the unit leadership, which can be compounded further if the perpetrator is a high performing service member who is liked by the unit leadership. Leaders are now in the difficult position of either supporting one of their best performers or supporting one of their poorer performers. Even if the leader tries to remain neutral, unintentional biases are likely to creep in.

**Problem Resolution at the Lowest Level** An important aspect of the military culture is to resolve personal conflicts within the team at the lowest possible level. If a team member does something or says something that you find offensive, insulting, or unprofessional, you are expected to personally confront the team member in question with your concerns. In response, the team member is expected to correct his or her behaviors. The military has historically frowned upon service members going directly to their supervisor or higher-ups in the military chain of command without first trying to resolve the issue themselves. This military approach to resolving personal conflicts at the lowest level is problematic for the prevention of sexual assault or harassment for a number of reasons. First, it allows for most instances of sexual harassment and even "lower" forms of sexual assault, such as groping and cornering, to go unreported. Second, it allows for the service member who engaged in the harassing behavior to simply move on to another service member, without necessarily ceasing the inappropriate behavior. Such "grooming" behavior is typical of perpetrators of sexual assault, as the perpetrators will continue until they have identified someone who does not speak up or resist. Third, it makes it difficult for junior service members to speak up when the harasser is senior in rank to them. Finally, and perhaps most insidiously, it allows for the harassing behaviors to go unreported, thereby missing an opportunity to document possible patterns of inappropriate behaviors of service members, many of whom may actually be perpetrators.

**Movement of Military Personnel** Inherent in the military culture is the continuous movement of military personnel from one duty station to another to allow for a wide diversity of job experiences, which are essential for professional development and thus military advancement. However, this appears to be when service members are the most vulnerable to being sexually assaulted. Perpetrators of sexual assault tend to be extremely opportunistic, so they are likely to sexually assault a service member who is new to the unit or at a time when they are getting ready to move to another duty station. Such a situation makes it difficult for service members who have been sexually assaulted to report the crime because they are new to the unit, afraid they will not be believed, and highly unlikely to have an established local support system. Additionally, concerns regarding the transfer of an accused perpetrator have been raised by service members who believe that doing so may be perceived as simply moving the problem from one command to another [58]. However, since most service members who have been sexually assaulted simply want to distance themselves from the perpetrator, this will often happen as either the service member who has been sexually assaulted or the perpetrator will be moved.

**Team Allegiance** The team is very important in the military. Nearly every task completed in the military is done by the team. No service member wants to let the team down. Reporting a fellow team member for harassment or even sexual assault can be seen as a form of team betrayal. The victim may not want to raise the issue because they do not want to be perceived as being disloyal to the team. Similarly, other members of the team may feel that by an official report being filed, especially if it concerns sexual harassment, the victim is making "a big deal" about something that they should just let go. In either case, the effectiveness of the team will be impacted. Paradoxically, perpetrators of sexual assault can easily take advantage of the trust and allegiance of service members to each other to avoid reports being made, although it is the perpetrator who is the one who betrayed the team.

**Leadership Responsibility** The military holds leaders responsible for establishing an environment free of sexual harassment and where sexual misconduct of any type will not be tolerated [12•]. Thus, when initial reports of sexual harassment or assault are made, leaders may feel that they are at fault, or will be blamed, for allowing such an environment to exist. If sexual harassment and sexual assaults occur because of the command climate, and the leader is responsible for the climate, then is it not the leader to be blamed when sexual harassment and assault occur in the unit? This could result in many leaders not wanting to act on the "minor"

incidents that they hear about, leading them to dismiss the allegations as unfounded or convince the service member who has been harassed or assaulted not to formally report the incident.

**Military Reporting System** Reporting a sexual assault within the military is a complicated process fraught with numerous barriers and uncertainties. A service member who has been sexually assaulted can either file a restricted report in which the assault remains confidential, yet enables the service member to receive medical care and other supportive services, without involving the military chain of command or law enforcement or the service member can file an unrestricted report in which the unit leadership and law enforcement are notified of the sexual assault in sufficient detail to begin a formal criminal investigation [9]. However, if the service member tells another service member who then discusses the assault with leadership or if the service member tells any person in the chain of command about the event, then confidentially is forfeited, and a formal investigation is initiated. When a restricted report of sexual assault is filed with the Sexual Assault Response Coordinator, it is possible that numerous others will be informed, including medical personnel, legal staff, and the chaplain. Further, even when a restricted report is filed, the senior leadership of the service member's installation is notified about the event, with information that would identify the service member being withheld. Concerns about confidentiality may arise nonetheless; service members have expressed that regardless of the type of report made, others are likely to find out and confidentiality may be difficult to maintain [58]. Thus, it is easy to see that service members who have been sexually assaulted do not believe a restricted report will remain confidential.

**Military Resilience Building Programs** All the military services have implemented resilience building initiatives to train service members how to react and cope in high demanding, stressful situations so they can still perform their military mission. Paradoxically, the military's emphasis on resilience as a measure of personal strength can actually serve to stop military personnel who have been sexually assaulted from reporting the crime and/or from getting help; by asking for help following a sexual assault, the service member by definition is admitting to being "weak" and unable to solve his or her own problems. This possible unintended consequence of resilience training is not often recognized by military leaders.

**Female Restriction Job Assignments** Many of the military services still have restrictions on positions that female service members may occupy. Typically, these gender restricted positions are the most desirable and conducive to advanced promotion within the military. Restricting assignments to positions based on gender may send the message that female personnel are not as valued as male personnel and therefore may be treated with disparagement. This situation can also occur when occupations that are open to both genders are nevertheless grossly underrepresented by females. Since the military is approximately 80 % male, females will typically always be underrepresented in most military occupations. With the recent Department of Defense decision to eliminate gender restrictions to all military occupations, it is expected that there will be an increase in sexual harassment and assaults similar to those seen with gender integration in other areas of the military such as the military academy [59]. Gender integration may also pose an increased risk of sexual assault for female service members should they become prisoners of war (POWs). Such an eventuality should be incorporated into POW and sexual assault training. Although these concerns represent an inherent characteristic of the military, if appropriate specialty skills are verified, it should not hinder full gender integration.

**Emphasis on Training** The military's solution to every social problem is generally a new policy, followed by mandated training, without really ever assessing the effectiveness of either. In the case of sexual assault, the military's response follows the same outline. With few exceptions, service members receive the same sexual assault prevention training regardless of age, gender, or position in the unit; it is a "one-size-fits-all" approach. The sexual assault prevention training assumes that everyone is at equal risk all the time. A health risk reduction strategy towards preventing sexual assault is noticeably absent. Indeed, a crime reduction strategy is not employed either, although over the past 10 years, the military's sexual assault prevention training has tended to focus on sexual assault as a crime. Instead, the bulk of the current sexual assault prevention training emphasizes the legal definition of sexual assault and how to report it (i.e., knowing the difference between restricted reporting and unrestricted reporting). Addressing the root causes and military cultural aspects of sexual assault are also noticeably absent. Accordingly, service members have recently indicated that they are not learning any new information in annual sexual assault trainings, and some have indicated the potential for desensitization without utilizing a variety of topics and training modalities [58]. In essence, sexual assault prevention training has become a "check-the-box" training exercise just so units can report to their higher headquarters that the task has been completed without really ever attempting to achieve the goals of the sexual assault prevention program.

**Living Arrangements** Co-ed dormitories and barracks are high-risk areas for military sexual assaults despite security measures including roommates, door locks, and ongoing guards. The military moved away from separate gender dormitories and barracks years ago to facilitate team building,

cohesion and gender integration, and to eliminate housing disparities. Rather than returning to separate gender facilities, significant efforts should be undertaken to enhance the safety of the occupants in military dormitories and barracks through continuously monitored closed circuit video, for example.

**Military Legal System** Various laws and rules enhance the difficulty of convictions. For example, assault victims cannot sue the military, as Title VII of the Civil Rights Act [60] does not apply to the armed forces. The military's mandate of relocating most service members every 2–3 years makes it more difficult to identify perpetrators, especially those who commit more than one offense. In the past, the "good soldier defense" has been used as a method of exonerating perpetrators based on their military performance and merit [61]. Concurrently, victims of sexual assault have been subjected to questioning and investigations into their lifestyle and behaviors prior to and during the assault, often believed by the military justice system to be a valid form of evidence. While the most recent National Defense Authorization Act prohibited the use of the "good soldier defense" and established additional support mechanisms for victims [62], inconsistencies and ambiguities related to sexual assault investigations remain. For example, the Military Rules of Evidence (MRE) 412, known as the "rape shield rule," prohibits the use of a victim's prior sexual history or behavior as evidence during a courts-marshal, unless ruled admissible by a military judge [63]. Since 1993, this rule has also been applied to pre-trial Article 32 hearings. However, gaps in policy related to the procedural requirements for implementing this rule, in addition to a lack of guidance for the investigating officer in making decisions based on this rule, have led to inconsistent interpretation [64•]. Therefore, without clear language making MRE 412 practically and procedurally applicable in Article 32 hearings, these gaps essentially allow the use of evidence regarding a victim's prior sexual history during these hearings [64•, 65]. Thus, it is clear that various organizational obstacles can contribute to a general condoning of sexual misconduct and further perpetuate its presence within the military.

## Confronting the Unpleasant Aspects of the Sexual Assault Problem in the Military: the Elephants in the Room

Effective solutions to the prevention of sexual assault in the military will require addressing critical issues that have heretofore been denied, avoided, or minimized.

**Risk Prevention** Suggesting steps women can take to protect themselves against being sexually assaulted is often viewed as "blaming the victim" [66, 67]. However, it must be remembered that sexual assault is a crime, and an important aspect of crime reduction is to focus on things potential victims can do to avoid becoming a victim, similar to anti-terrorist training in which service members are educated and trained how to avoid being a target and what actions to take when terrorist acts occur [68]. Sexual assault risk prevention training can be one part of a multifaceted effort to curb sexual violence. This does not mean women or men should be blamed if they are sexually assaulted simply because they failed to follow all the crime prevention measures. By equating sexual assault prevention training as a form of blaming the victim, a powerful prevention tool to counter sexual assault is not being used.

**Male Sexual Assault** The belief that sexual assault is a "women's issue" is still a very prevalent misconception. Although women are more likely to be victims of military sexual assault and harassment than male service members, the actual number of male service members sexually assaulted is similar to that of female service members due to the predominance of males in the military [69•, 70]. Male service members face the same challenges in reporting sexual assaults and in seeking health care as do female service members and perhaps even more so due to the stigmatizing nature of the act. Despite this, military leaders, and society in general, continuously avoid discussing male sexual assault, perhaps because the topic is too unpleasant. The military's sexual assault prevention training lacks sufficient information about male victims and the distinct challenges they face which influence reporting [71]. Further, many of the sexual acts perpetrated on males appear to be motivated by humiliation and/or some form of punishment, verging on cruelty [57]. Efforts to prevent sexual assault must include strategies that also address sexual assaults among male service members. Military leaders must recognize and speak openly regarding the prevalence of male sexual assault.

**Biases and Prejudices about Sexual Behavior** Personal views about sexual behavior feed into many of the myths of sexual assault and harassment [72, 73]. Comments such as "sex should wait until marriage" or the use of derogatory terms such as "pick-up" or "hook-up" culture only serve to create a culture of prejudging victims of sexual assault. They contribute to a culture in which victims are less likely to report sexual assaults or harassing behaviors and one in which potential sexual perpetrators are allowed to exist, knowing that their actions are less likely to be reported or believed. The dangers of imposing personal or religious beliefs about sexual behavior need to be clearly articulated in sexual assault prevention training programs.

**Viewing Sexual Assault as an Individual Crime** While nearly everyone is in agreement that sexual assault and harassment are reflective of deeper cultural biases about gender and what is considered appropriate sexual behavior, sexual assault

is still most often treated as a crime of one person against another. Thus, most solutions to prevent sexual assault focus on detecting the perpetrator, intervening to stop the crime, reporting the crime, or obtaining convictions for the crime, as opposed to changing the culture around how women and gender are viewed and treated. Solutions that address the negative cultural ideologies about gender and the trivializing and normalizing of such thoughts and behaviors are lacking. Further, when sexual assault is primarily viewed from the standpoint of crime, care for the victims becomes secondary and the focus on treatment is minimized, often leaving victims with severe physical and psychological needs that go unmet. Sexual assault is a crime, but it stems from a culture where respect and dignity for other human beings is lacking. We must view sexual assault beyond that of the individual crime.

**Legal Drinking Age** The age to legally buy and consume alcohol was raised from 18 to 21 years in 1984 to address the alarming number of alcohol-related automobile fatalities involving 18–20-year olds [74, 75]. At the time, it was anticipated that underage drinking was likely to increase among this newly disenfranchised group, especially among high school and college students. Because underage drinking typically occurs "behind closed doors," it is often done in larger volumes leading to heavy intoxication or blackouts, creating vulnerability for sexual assault [76, 77]. In fact, alcohol has been estimated to have contributed to over 97,000 cases a year of sexual assault among college students and approximately half of sexual assaults in the military [11, 44, 78]. Since underage drinking is a crime, underage individuals who become victims of sexual assault are much less likely to report sexual assault due to the co-criminality aspects surrounding the assault [79, 80]. Within the military, it is not uncommon for commanders to immediately punish the victims of sexual assault who have engaged in underage drinking, while the accused perpetrators await the outcome of the criminal investigation, which usually results in acquittal or no action taken. The issue has become so acute that the Air Force now typically suspends punishment for co-occurring crimes, such as underage drinking, until the disposition of the sexual assault accusation is determined.

**Complex Military Reporting System** The military system for reporting sexual assaults is complex, with restricted and unrestricted pathways, involving multiple people among numerous military agencies (personnel, medical, legal, criminal investigations, etc.), including the service members chain of command [9]. Given the complexity and number of people involved, it is not surprising that many service members do not report sexual assaults [81, 82]. Many service members fear that reporting a sexual assault will not remain confidential [81, 82]. Service members who report sexual assault generally report that they were not believed and that they suffered from retaliation by other unit members [11, 12•, 52]. Thus, reporting a sexual assault within the military carries enormous threats to one's career.

**Priority of Sexual Assault Prevention** The military mandates that service members complete more training than can possibly be accomplished. Indeed, the army would need to add nearly 2 months to the calendar in order to complete all required training [83]. This burden of training can result in much training either not being completed or not being completed to standards. Sexual assault prevention training is supposed to be conducted in small, interactive groups facilitated by a trained instructor, yet in at least one instance, this requirement was met by having soldiers stand around a radio and being told by someone at a different location not to touch girls [83]. Thus, sexual assault prevention training, like many other mandated military training, has become a "check-the-box" training exercise just so units can report to their higher headquarters that the task has been completed without really ever attempting to achieve the goals of the sexual assault prevention program. Until the military takes sexual assault prevention training seriously by assigning it a top priority, attempts to reduce sexual assault within the military through skills training and education will fail.

**Legal System Favors the Perpetrator** America's legal system is based on the essential, fundamental principle, "innocent until proven guilty." However, in cases of sexual assault, even when there is evidence of the sexual act or behavior, it is difficult to prove that consent was not given, enabling sexual perpetrators to avoid punishment. It is relatively simple for the accused to assert that there was consent and difficult for the prosecution to refute. The low conviction rates of accused sexual perpetrators [11, 12•, 49] are prima fascia evidence of the surrounding difficulties, proving lack of consent. All efforts to increase the conviction rates of sexual assaults must keep these basic facts in mind. It should be recognized that the military has attempted to make the reporting of sexual assault less psychologically demanding by eliminating the requirement for victims of sexual assault to testify during Article 32 investigations. Further, the investigating officer is now a Judge Advocate General officer (i.e., a lawyer) to ensure that all legal evidence obtained is of the highest quality and thus would be admissible in court proceedings. Finally, the military has established special prosecutors for sexual assault cases, known as Special Victims' Counsel, with the hope that by using highly skilled lawyers in the prosecution of sexual assaults, the conviction rates will increase. Whether these changes in the investigation, evidence collection and trial of sexual assaults will increase the number of cases prosecuted and convicted remains to be determined.

**False Accusations** Narratives around sexual assault often include a "myth" around false accusations, indicating that untrue allegations of sexual assault are rare. However, according to the Federal Bureau of Investigation, 8 % of sexual assaults are false accusations [84]. This number includes cases considered to be judged "unfounded" or "baseless" [85]. The most recent report from the DoD found that 9 % of all sexual assault reports received in 2014 (or 17 % sexual assault cases with a decision) were considered false or baseless [12•]. Although these percentages still represent a small minority, this data demonstrates that untruthful reporting is not as rare as we are often led to believe. The truth is that false accusations of sexual assault do happen. Although this is an unpleasant subject and many will worry this acknowledgment could derail the work being done to combat sexual assault, we must be candid about true rates of false accusations or else risk credibility with our toughest critics. Notwithstanding the harm done to a falsely accused individual, dishonest reporting of sexual assault does irreparable harm to prevention efforts. False reports make us skeptical of sexual assault accusations, resulting in less reporting, less convictions, more intolerance, and animosity towards victims and less motivation in recognizing the severity of the problem. Further, no efforts have been made in preventing false accusations or disciplining those who make false reports. These must be part of a holistic strategy in addressing sexual assault.

## Restoring Human Dignity and Respect

Fundamentally, acts of sexual assault and harassment represent a lack of respect and dignity towards others. Creating a culture of dignity and respect and free of sexual assault and harassment will require far more sweeping changes than the military (or any organization for that matter) has attempted to date. Drawing on the root causes and myths of sexual assault and harassment, the unique military culture factors related to sexual assault and harassment, as well as confronting the various unpleasant factors surrounding sexual assault all presented above, the following broad set of recommendations are offered.

First, sexual assault must be recognized as primarily a cultural and leadership problem. The DoD acknowledges the fundamental role of leaders in sexual assault prevention and places them at the "center of gravity" in the prevention and response efforts [12•]. The DoD also recognizes that sexual assault exists as part of a continuum of harm preceded by sexually harassing and discriminatory language and behaviors [12•]. Leaders at all levels must be held personally accountable for the unit climate and culture in which sexual harassment and assaults are allowed to exist. Leaders' responses to reports of sexual harassment and assault should be closely monitored by an independent, external military agency to ensure that reports of sexual harassment and assault are not ignored or minimized. Commanders who openly (or privately) challenge a claim of sexual harassment or assault before an independent investigation is completed should be removed from their position of leadership. In addition, attention needs to be paid to ensure that leaders do not explicitly or implicitly allow retaliation against reporters of sexual harassment or assault to occur in any form. Commanders or leaders who allow such behaviors should also be removed. This being said, leaders must be provided the necessary resources and support needed to change the unit climate and culture around attitudes and behaviors related to sexual harassment and assault. Thus, senior leaders must be held equally accountable for not supporting efforts in their subordinate units to change the climate and culture around sexual harassment and assault. In particular, following 14 years of continuous war, renewed training and education efforts must be directed to junior and mid-level leaders who may lack the necessary skills to act appropriately in the handling of sexual harassment and assault accusations, as leading in garrison is very different than leading in combat, especially from an administrative perspective.

Second, sexual assault prevention skill training should be developed that focuses on psycho-education and risk reduction skills and include a variety of training modalities. Training must occur early and throughout every service member's career. Prevention should be comprehensive in addressing the root causes of sexual assault and the role of military culture and confront those topics often difficult to discuss. Further, the effectiveness of prevention efforts must be examined related to their ability to actually reduce sexual assault and harassment. Research should also explore the best methods for implementing successful sexual assault prevention, including: When should the training occur? What are the best methods for avoiding training fatigue or desensitization? What skills should be taught? How/when should follow-up occur? The effectiveness and limitations of sexual assault prevention trainings currently implemented within the military must be closely examined. In particular, the bystander intervention approach so readily adopted by the military, which encourages witnesses of sexual harassment and/or sexual assault to intervene, needs to be re-examined with specific consideration given to the unintended second and third order effects of adopting this approach without a full understanding of the possible harm that may result from the bystander intervention (see Elk & Devereaux, 2014 [86]). Training interventions that do not demonstrate effectiveness should be replaced with new evidence-based approaches.

Third, the military reporting system and database of perpetrators of sexual assault and harassment must be restructured. Begin by establishing a single agency to oversee all aspects of sexual harassment and sexual assault responses, reporting, and training. Given the prevalence of sexual harassment and stalking behavior that precedes sexual assaults, attention

Case 4:22-cv-12865-FKB-KGA ECF No. 48-4, PageID.912 Filed 05/22/25 Page 10 of 13



should be given towards intervening against the perpetrator when these behaviors occur as opposed to waiting for the behavior to escalate to assault. A single database of all accusations of these types of behaviors should be maintained and actively monitored. Since October of 2013, the DoD has been utilizing a Sexual Assault Incident Database for the collection of information related to sexual assault reports and case management [12•]. However, this database is specific to incidents of sexual assault and should be expanded to include sexual harassment and stalking. Such database should be utilized not only to ensure that victims are receiving timely and adequate support but also to detect serial perpetrator behaviors that fall along the continuum of harm. In addition, the reporting system for sexual harassment and assault should be simplified. Policy should mandate the reporting of sexual harassment, stalking, and/or sexual assault by any individual who witnesses these behaviors. This policy would hold all individuals accountable for reporting instances of inappropriate behaviors while also creating advocates for victims without themselves having to come forward. Lastly, we must provide victims the power of decision-making throughout the investigative and reporting process. Whether an individual reports witnessing inappropriate behaviors or an individual comes forward disclosing being the victim of such acts, a victim of sexual harassment or assault should be the sole decider of whether to file a formal report regarding the incident. At no point in the process should a victim be discouraged from filing a report. At no point should a victim be required to file a report of any type in order to have the incident recorded in their records or to receive care, and at no point in the process should a victim forfeit their right to privacy based on who they may have spoken to about an incident. Control at all times must lie with the victim.

Fourth, modify existing military (and civilian) laws and regulations aimed at preventing sexual assaults. For example, the second order effects of underage drinking on sexual assault reporting must be considered. Adapting the legal drinking age in the military from 21 to 18 years of age or modifying policies related to punishment for underage drinking in the military could begin to address these effects. Such an action would remove a significant barrier to the reporting of sexual assaults, as well as remove one of the key retaliatory actions taken by commanders against victims who report sexual assault. The military should also allow for the emotional and psychological harm resulting from sexual harassment and assault to be allowed as prima fascia evidence that consent was not given. Individuals who file false reports of sexual harassment and assault should be punished to discourage future false reporting.

Fifth, support for victims of sexual assault must be increased. The standard 8–10-week medical treatment protocol for victims of sexual assault is generally insufficient for full recovery to occur [87]. Longer, more comprehensive care is typically needed, including long-term follow-up care. Victims of sexual assault should receive additional support as they move from one duty station to another. This support should address ongoing psychological issues that may impact successful transition into the new environment as well as prevent revictimization. Victims of sexual harassment and assault should also receive additional transition support as they leave the military since this proves to be an especially difficult time for survivors of sexual assault. There have been numerous claims by victims of sexual assault that they received a "secondary" diagnosis of a prior mental health disorder (e.g., personality or adjustment disorders) after they came forward with a report of sexual assault. These claims deserve immediate investigation. If true, such a practice is the equivalent of the medical community blaming the victim and sets the stage for the military to deny longer term benefits and care to victims of sexual harassment and assault that occurred during military service.

While other recommendations can most certainly be offered to reduce or eliminate sexual harassment and assault in the military, as well as ensure that victims of sexual assault receive the necessary support to recover from such acts, it is our hope that the recommendations outlined here can serve as a new beginning for changing the military culture so that every service member views one another with dignity and respect. Those who serve deserve nothing less.

## Conclusion

Sexual assaults within the military represent a significant threat to military readiness, as sexual assaults inflict serious health effects and performance degradation. Thus far, the military's attempts to end sexual assault appear sporadic and half-hearted. What is desperately needed to end sexual assault within the military is a comprehensive and sustained strategy that considers the root causes and myths surrounding sexual assault, the military cultural factors that may unintentionally contribute to sexual assault, and the uncomfortable issues surrounding sexual assault that are often ignored (such as the prevalence of male sexual assault within the military). The military's strategy must be based on evidence-based approaches that (a) change the military culture and leadership around how women are viewed and treated, (b) employ sexual assault prevention psycho-education and skill training, (c) make reporting incidences of sexual harassment and assault a right of the victims to maintain total control throughout the entire process including the prosecution phase, (d) seek to modify laws and regulations to increase the likelihood of sexual assaults being reported and decrease the likelihood of perpetrators manipulating the law to obtain acquittals, and (e) increase the support of survivors of sexual assault, including support throughout the service members military career and post-military life.

Case 4:22-cv-12865-FKB-KGA ECF No. 48-4, PageID.913 Filed 05/22/25 Page 11 of 13



**Compliance with Ethics Guidelines**

**Conflict of Interest** Carl Andrew Castro, Sara Kintzle, Ashley C. Schuyler, and Carrie L. Lucas declare that they have no conflict of interest.

Christopher H. Warner declares that he is on active duty in the US Army.

**Human and Animal Rights and Informed Consent** This article does not contain any studies with human or animal subjects performed by any of the authors.

## References

Papers of particular interest, published recently, have been highlighted as:
- • Of importance
- •• Of major importance


1.• National Defense Research Institute (NDRI). Sexual assault and sexual harassment in the military: top-line estimates for active-duty service members from the 2014 RAND military workplace study. Washington, D.C.; 2014. **This report contains the most recent estimates of sexual harassment and assaults occurring with the military.**
2. Street A, Vogt D, Dutra L. A new generation of women veterans: stressors faced by women deployed to Iraq and Afghanistan. Clin Psychol Rev. 2009;29(8):685–94.
3. Turchik J, Wilson S. Sexual assault in the US military: a review of the literature and recommendations for the future. Aggress Violent Behav. 2010;15(4):267–77.
4. Hall M, Hall J. The long-term effects of childhood sexual abuse: counseling implications. 2011. http://www.counseling.org/docs/disaster-and-trauma_sexual-abuse/long-term-effects-of-childhood-sexual-abuse.pdf?sfvrsn=2. Accessed 01 Feb 2015.
5. Krebs C, Lindquist C, Warner T, Fisher B, Martin S. College women's experiences with physically forced, alcohol-or other drug-enabled, and drug-facilitated sexual assault before and since entering college. J Am Coll Health. 2009;57(6):639–49.
6. Defense Manpower Data Center. 2012 Workplace and gender relations survey of active duty members. Washington: Department of Defense; 2013.
7. Krug E, Mercy J, Dahlberg L, Zwi A. The world report on violence and health. Lancet. 2002;360(9339):1083–8.
8. Watts C, Zimmerman C. Violence against women: global scope and magnitude. Lancet. 2002;359(9313):1232–7.
9. Department of Defense. Sexual Assault Prevention and Response (SAPR) Program. Directive number 6495.01. 2015 Jan 20.
10. Dripps D. After rape law: will the turn to consent normalize the prosecution of sexual assault. Akron Law Rev. 2008;41:957–80.
11. Department of Defense. Annual report on sexual assault in the military. Washington, D.C.; 2013.
12.• Department of Defense. Report to the President of the United States on Sexual Assault Prevention and Response. Washington, D.C.; 2014. **This Department of Defense (DoD) report to the President of the United States details the progress and efforts that DoD has made in sexual assault prevention. It is an important source for what has and hasn't been done.**
13. Kang H, Dalager N, Mahan C, Ishii E. The role of sexual assault on the risk of PTSD among gulf war veterans. Ann Epidemiol. 2005;15(3):191–5.
14. Yaeger D, Himmelfarb N, Cammack A, Mintz J. DSM-IV diagnosed posttraumatic stress disorder in women veterans with and without military sexual trauma. J Gen Intern Med. 2006;21(S3):S65–9.
15. Campbell R, Greeson M, Bybee D, Raja S. The co-occurrence of childhood sexual abuse, adult sexual assault, intimate partner violence, and sexual harassment: a mediational model of posttraumatic stress disorder and physical health outcomes. J Consult Clin Psychol. 2008;76(2):194–207.
16. Hankin C, Skinner K, Sullivan L, Miller D, Frayne S, Tripp T. Prevalence of depressive and alcohol abuse symptoms among women VA outpatients who report experiencing sexual assault while in the military. J Trauma Stress. 1999;12(4):601–12.
17. Lang A, Rodgers C, Laffaye C, Satz L, Dresselhaus T, Stein M. Sexual trauma, posttraumatic stress disorder, and health behavior. Behav Med. 2003;28(4):150–8.
18. Laws A, Golding J. Sexual assault history and eating disorder symptoms among White, Hispanic, and African-American women and men. Am J Public Health. 1996;86(4):579–82.
19. Skinner K, Kressin N, Frayne S, Tripp T, Hankin C, Miller D, et al. The prevalence of military sexual assault among female Veterans' Administration outpatients. J Interpers Violence. 2000;15(3):291–310.
20. Frayne S, Skinner K, Sullivan L, Tripp T, Hankin C, Kressin N. Medical profile of women veterans administration outpatients who report a history of sexual assault occurring while in the military. J Womens Health Gend Based. 1999;8(6):835–45.
21. Smith S, Breiding M. Chronic disease and health behaviours linked to experiences of non-consensual sex among women and men. Public Health. 2011;125(9):653–9.
22. Castro C, Kintzle S, Hassan A. The State of the American Veteran: the Los Angeles County veterans study. 2014. http://cir.usc.edu. Accessed 01 Feb 2015.
23. Dichter ME, True, G. This is the story of why my military career ended before it should have: premature separation from military service among U.S. women veterans. Affilia. Published online 14 Oct 2014.
24. Brown P. Trauma sets female veterans adrift back home. The New York Times. 2013 Feb 27. http://www.nytimes.com/2013/02/28/us/female-veterans-face-limbo-in-lives-on-the-street.html?pagewanted=all. Accessed 01 Feb 2015.
25. Hunter M. Honor betrayed: sexual abuse in America's military. Fort Lee: Barricade Books Incorporated; 2007.
26. Kurpius S, Lucart A. Military and civilian undergraduates: attitudes toward women, masculinity, and authoritarianism. Sex Roles. 2000;43(3–4):255–65.
27. Aosved A, Long P. Co-occurrence of rape myth acceptance, sexism, racism, homophobia, ageism, classism, and religious intolerance. Sex Roles. 2006;55(7–8):481–92.
28. Murnen S, Wright C, Kaluzny G. If "boys will be boys", then girls will be victims? A meta-analytic review of the research that relates masculine ideology to sexual aggression. Sex Roles. 2002;46(11–12):359–75.
29. Santana M, Raj A, Decker M, La Marche A, Silverman J. Masculine gender roles associated with increased sexual risk and intimate partner violence perpetration among young adult men. J Urban Health. 2006;83(4):575–85.
30.• Katz L, Bloor L, Cojucar G, Draper T. Women who served in Iraq seeking mental health services: relationships between military sexual trauma, symptoms, and readjustment. Psychol Serv. 2007;4(4):239–49. **This paper details the long-term impact of sexual assault on the victims that persists years after the assault occurs and provides useful recommendations for caring for these victims.**

Case 4:22-cv-12865-FKB-KGA ECF No. 48-4, PageID.914 Filed 05/22/25 Page 12 of 13




31. Hannagan R, Arrow H. Reengineering gender relations in modern militaries: an evolutionary perspective. J Trauma Dissociation. 2011;12(3):305–23.
32. Neill K. Duty, honor, rape: sexual assault against women during war. J Int Women's Stud. 2000;2(1):43–51.
33. Merrill L, Newell C, Thomsen C, Gold S, Milner J, Koss M, et al. Childhood abuse and sexual revictimization in a female Navy recruit sample. J Trauma Stress. 1999;12(2):211–25.
34. Sadler A, Booth B, Cook B, Doebbeling B. Factors associated with women's risk of rape in the military environment. Am J Ind Med. 2003;43(3):262–73.
35. Arata C. Child sexual abuse and sexual revictimization. Clin Psychol Sci Pract. 2002;9(2):135–64.
36. Katz J, May P, Sörensen S, DelTosta J. Sexual revictimization during women's first year of college: self-blame and sexual refusal assertiveness as possible mechanisms. J Interpers Violence. 2010;25(11):2113–26.
37. Messman-Moore T, Walsh K, DiLillo D. Emotion dysregulation and risky sexual behavior in revictimization. Child Abuse Negl. 2010;34(12):967–76.
38. Rich C, Gidycz C, Warkentin J, Loh C, Weiland P. Child and adolescent abuse and subsequent victimization: a prospective study. Child Abuse Negl. 2005;29(12):1373–94.
39. Ullman S, Najdowski C, Filipas H. Child sexual abuse, posttraumatic stress disorder, and substance use: predictors of revictimization in adult sexual assault survivors. J Child Sex Abus. 2009;18(4):367–85.
40. Hill M, Fischer A. Does entitlement mediate the link between masculinity and rape-related variables? J Couns Psychol. 2001;48(1):39–50.
41. Corbett S. The women's war. The New York Times Magazine. 2007 March 18. http://www.nytimes.com/2007/03/18/magazine/18cover.html?pagewanted=all. Accessed 02 Feb 2015.
42. Bouffard LA. Exploring the utility of entitlement in understanding sexual aggression. J Crim Just. 2010;38(5):870–9.
43. Copelon R. Resurfacing gender: reconceptualizing crimes against women in time of war. In: Stilgmayer A, editor. Mass rape: the war against women in Bosnia-Herzegovina. U. of Nebraska Press; 1994.
44. Department of Defense. Report of the Defense Task Force on Sexual Harassment and Violence at the Military Service Academies. Washington, D.C.; 2005.
45.• Abbey A, Wegner R, Woerner J, Pegram SE, Pierce J. Review of survey and experimental research that examine the relationship between alcohol consumption and men's sexual aggression perpetration. Trauma Violence Abuse. 2014;15(4):265–82. **This review article details the effects that alcohol has as an antecedent to sexual violence.**
46. McCrummen S. The choice. The Washington Post. 12 April 2014. http://www.washingtonpost.com/sf/national/2014/04/12/the-choice/. Accessed 15 Jan 2015.
47. Kovaleski T, Wagner L, Escamilla F. Military women: we got fired for being raped. 4 March 2014. http://www.nbcbayarea.com/news/local/Military-Women-We-Got-Fired-For-Being-Raped-248287311.html. Accessed 15 Jan 2015.
48. Pershing JL. Why women don't report sexual harassment: a case study of an elite military institution. Gend Issues. 2003;21(4):3–30.
49. Department of Defense. Annual report on sexual assault in the military. Fiscal year 2012. Washington, D.C.; 2012.
50. U.S. Department of Justice. Executive Office for United States Attorneys. United States Attorneys' Annual Statistical Report. Fiscal year 2010. Washington, D.C.; 2010.
51. Bogdanich W. Reporting rape, and wishing she hadn't. The New York Times. 2014. http://www.nytimes.com/2014/07/13/us/how-one-college-handled-a-sexual-assault-complaint.html?_r=0. Accessed 02 Feb 2015.
52. Campbell R, Raja S. The sexual assault and secondary victimization of female veterans: help-seeking experiences with military and civilian social systems. Psychol Women Q. 2005;29(1):97–106.
53. Hamblin J. All she said was no. The Atlantic. 10 June 2014. http://www.theatlantic.com/health/archive/2014/06/opinion-columnist-questions-sexual-assault/372475/. Accessed 15 Jan 2015.
54. Ader M, Cuthbert R, Hoechst K, Simon EH, Strassburger M, Wishnie M. Casting troops aside: the United States military's illegal personality disorder discharge problem. Silver Spring: Vietnam Veterans of America; 2012.
55. Davis K. The doctors try to turn it around like you're crazy. Army Times. 7 Oct 2013. http://www.armytimes.com/article/20131007/CAREERS/310070008/-doctors-try-turn-around-like-you-re-crazy. Accessed 15 Jan 2015.
56. Kilmas J. Pentagon using change in diagnoses to hide sexual assault cases, critics charge. Washington Times. 2014. http://www.washingtontimes.com/news/2014/may/26/pentagon-using-change-in-diagnoses-to-hide-sexual-/print/. Accessed 02 Feb 2015.
57. Penn N. Son, men don't get raped. GQ Magazine. 2014. http://www.gw.com/long-form/male-military-rape. Accessed 15 Jan 2015.
58. Rock L, Van Winkle E, Namrow N, Hurley M. 2014 Department of Defense Report of Focus Groups on Sexual Assault Prevention and Response. DMDC report no. 2014-041. Alexandria: Defense Manpower Data Center; 2014.
59. Barkalow C, Raab A. In the men's house: an inside account of life in the Army by one of West Point's first female graduates. New York: Poseidon Press; 1990.
60. Civil Rights Act of 1964, Pub. L. 88–352, 78 Stat. 241. 1964
61. Hillman EL. The"Good soldier" defense: character evidence and military rank at courts-martial. Yale Law J. 1999;108(4):879–911.
62. H.R. 3979, 113th Congress. Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015. 2014.
63. Manual for Courts-Martial (MCM), United States. Mil R Evid [412]. 2008.
64.• Rosenthal ME. Where is the Justice? The sexual assault crisis plaguing the military and a lack of meaningful justice. Univ Miami Natl Sec Armed Conflict L Rev. 2014;295. **This article provides a useful critique of the military (and civilian) justice system in holding sexual perpetrators accountable.**
65. Protect Our Defenders. Press release: President Obama signs executive order undermining rape shield protections for victims of rape in the military. 17 June 2014. http://www.protectourdefenders.com/press-release-president-obama-signs-executive-order-undermining-rape-shield-protections-for-victims-of-rape-in-the-military/. Accessed 01 Feb 2015.
66. Horzepa HR. Victim blaming: an all-too-common response to sexual assault. Huffington Post. 11 Nov 2011. http://www.huffingtonpost.com/hayley-rose-horzepa/victim-blaming_b_847310.html. Accessed 15 Jan 2015.
67. Van den Bos K, Maas M. On the psychology of the belief in a just world: exploring experiential and rationalistic paths to victim blaming. Personal Soc Psychol Rev. 2009;35(12):1567–78.
68. Joint Knowledge Online (JKO) Level I Antiterrorism Awareness Training. 2015. http://jko.jten.mil/courses/at11/launch.html. Accessed 09 Feb 2015.
69.• Hoyt T, Klosterman Rielage J, Williams LF. Military sexual trauma in men: a review of reported rates. J Trauma Dissociation. 2011;12(3):244–60. **This review article is useful in assisting in the interpretation of sexual assaults among men.**
70. Turner C, Frayne S. Military sexual trauma: veterans health initiative independent study course. Birmingham: Department of Veterans Affairs; 2004. http://www.publichealth.va.gov/docs/vhi/military_sexual_trauma.pdf.

71. US Government Accountability Office (GAO). Military personnel—actions needed to address sexual assaults of male servicemembers. GAO-15-284. Washington, D.C.; 2015.
72. Burt MR. Cultural myths and supports for rape. J Pers Soc Psychol. 1980;38(2):217–30.
73. Lonsway KA, Fitzgerald LF. Rape myths in review. Psychol Women Q. 1994;18(2):133–64.
74. Saffer H, Grossman M. Drinking age laws and highway mortality rates: cause and effect. Econ Inq. 1987;25(3):403–17.
75. US Government Printing Office (GPO). National minimum drinking age. 23 U.S.C. § 158. http://www.gpo.gov/fdsys/pkg/USCODE-2011-title23/html/USCODE-2011-title23.htm. Washington, D.C.; 1984.
76. Champion HL, Foley KL, Durant RH, Hensberry R, Altman D, Wolfson M. Adolescent sexual victimization, use of alcohol and other substances, and other health risk behaviors. J Adolesc Health. 2004;35(4):321–8.
77. Mayer RR, Forster JL, Murray DM, Wagenaar AC. Social settings and situations of underage drinking. J Stud Alcohol Drugs. 1998;59(2):207–15.
78. Hingson RW, Zha W, Weitzman ER. Magnitude of and trends in alcohol-related mortality and morbidity among US college students ages 18–24, 1998–2005. J Stud Alcohol Drugs. 2009;16:12–20.
79. Fisher BS, Daigle LE, Cullen FT, Turner MG. Reporting sexual victimization to the police and others results from a national-level study of college women. Crim Justice Behav. 2003;30(1):6–38.
80. Ruback RB, Menard KS, Outlaw MC, Shaffer JN. Normative advice to campus crime victims: effects of gender, age, and alcohol. Violence Vict. 1999;14(4):381–96.
81. US Government Accountability Office (GAO). DOD's and the coast guard's sexual assault prevention and response programs face implementation and oversight challenges. GAO-08-924. Washington, D.C.; 2008.
82. US Air Force. Office of the Assistant Secretary of the Air Force. Report Concerning the Assessment of USAF Sexual Assault Prevention and Response. Washington, D.C.; 2004.
83. Wong L, Gerras SJ. Lying to ourselves: dishonesty in the Army profession. U.S. Army War College Strategic Studies Institute. Carlisle Barracks: United States Army War College Press; 2015.
84. Federal Bureau of Investigations (FBI). Uniform crime reports. Washington, D.C.: US Department of Justice; 1997.
85. Lisak D, Gardinier L, Nicksa SC, Cote AM. False allegations of sexual assault: an analysis of ten years of reported cases. Violence Against Women. 2010;16(12):1318–34.
86. Elk LC, Devereaux S. The failure of bystander intervention. The New Inquiry. 23 Dec 2014. http://thenewinquiry.com/essays/failure-of-bystander-intervention/. Accessed 15 Jan 2015.
87. Bradley R, Greene J, Russ E, Dutra L, Westen D. A multidimensional meta-analysis of psychotherapy for PTSD. Am J Psychiatry. 2005;162(2):214–27.