Ex 19

313-567-8100 · 888-800-0676
www.hansonreporting.com
HANSON RENAISSANCE
COURT REPORTERS & VIDEO
2111 Woodward Ave., Suite 1105
Detroit, Michigan 48201

**Jerry Rushing**
**02/27/2025**

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

TARA D MILLER,

Plaintiff,

Case No. 2024-207193-NO

Vs.

Hon. F. Kay Behn

DENIS McDONOUGH, Secretary of The Department of Veterans Affair,

Defendants.

______________________________________/

DEPOSITION OF JERRY RUSHING

taken on Thursday, the 27th day of February, 2025 at 2:36 p.m. Via Video Teleconference.

HANSON RENAISSANCE COURT REPORTERS & VIDEO hansonreporting.com 313.567.8100

A In my position -- in that position in February, 2021, no.
Q So, who handled super complaints of supervisor harassment to your knowledge in February, 2021?
A That would be an EEO complaint.
Q And who would be handling those complaints in the EEO?
A That would be at the facility level. That would be the EEO officer at the facility -- at each individual facility.
Q I see. So, who at VISN would deal with complaints made against supervisors?
A There would've been -- complaints of harassment would be made through the facility. And if -- my understanding, since I never had them elevated up to me, is if there was a suspicion that it was a valid allegation, if there's something to it then it would be -- that would be pushed up to an investigation against that supervisor at that point. And --
Q And that -- I'm sorry, go ahead.
A And that might be handled by a specialist at the facility, depending on the level of the supervisor.
Q Would you ever handle that investigation?
A In February, 2021, I -- my position, I did executive level. So it would be if the top five, if, you know, the director of facility, chief of staff, assistant



director, if somebody like that had an allegation of misconduct, then I would conduct the investigation against them. But not a service chief, not a supervisor, frontline supervisor, that would've been handled likely at the facility level.
Q Now, I have a document and I'm going to just have it marked as Exhibit 1.
(Plaintiff's Exhibit Number 1 marked for identification)
MR. MARTIN: And, Chris, you might be able to get ahold of this in your file.
BY MR. MARTIN:
Q This is a memorandum dated February the second, 2021 from Mr. Gerald -- Jerry Rushing, VISN 10 employee and labor relations notice of harassment complaints slash allegations to Eric Osterbeck, senior strategic business partner. Did you get a chance to review this document before the deposition today? Mr. Rushing?
A No, sir.
MR. DOYLE: I don't know if I do have that, Rick. Do you have a Bates number or something that I can or --
MR. MARTIN: Yeah. Yes, I do. 00041.
MR. DOYLE: Let me see if I have that. If we can just go off the record for a second.
MR. MARTIN: Yeah.
COURT REPORTER: We're off the record at 2:48 p.m.



(Off the record)
COURT REPORTER: Back on the record. The time is 3:04 p.m.
MR. DOYLE: Okay. So, Jerry, if you need me to zoom in or scroll just let me know.
THE WITNESS: Okay. Yeah, I can -- I'm able to zoom in on my phone here.
MR. DOYLE: Okay.
MR. MARTIN: Mr. Rushing, take your time and review it and let me know when you're finished.
THE WITNESS: Okay. Can you scroll past 3E. Okay. I've gone down to E5. Is there anything beyond that?
BY MR. MARTIN:
Q I think that's it, Mr. Rushing.
A Okay.
Q Okay. Does this document help refresh your recollection regarding Tara Miller's complaints that you --
A I --
Q I'm sorry, go ahead.
A No, please finish.
Q That were referred to you.
A I must -- yeah, I received a complaint.
Q Do you recall talking with Mr. Osterbeck, her supervisor, about the complaint?



A I vaguely recall talking to him, but I don't know the sub -- I can't recall the substance of the complaint or of our conversation.
Q Okay. So, at this point in time you don't recall exactly what you did, what he said, and any follow up or anything like that?
A No, I -- based on this I can only assume that I completed an inquiry and I would've been required to submit my findings of fact.
Q And where could we get those documents, your findings, and any documents related to this particular complaint? Where would that be stored and maintained?
A If it was forwarded to me by the facility HPPC, then my assumption is that they would have that -- they might have any record of that investigation and the report of it.
Q Okay. What is the procedure? You would do an investigation and you would document it, correct?
A Yes.
Q And that documentation regarding the investigation, where were you responsible to send it to?
A If we receive it from there, I either I would've responded to the HPPC at the medical center in Detroit, and I likely would've copied my immediate supervisor's, Mr. Gonzales -- Eric Gonzalez.

COURT REPORTER: What was that name, sir?
THE WITNESS: **Eric Gonzalez.**
BY MR. MARTIN:
Q He was your immediate supervisor?
A **Yes, he was the -- he is a VISN 10 human resources officer.**
Q So, just so we're clear, that he was your immediate supervisor at that time?
A **Yes.**
Q And you used some other acronyms for -- you refer to HBC. Can you break that down for us so we can understand, the court reporter can, you know, get it down for the record so the court would know what you're referring to?
A **Okay. It's from Item 1 in the document there, the facility harassment prevention program coordinator at the Detroit Medical Center.**
Q Oh, I see. Okay. Thank you.
A **Yeah. So, from VHA harassment prevention coordinator, I don't recall any names on that, but that would be the office that would have results of any investigation, any report.**
Q Okay. So it's fair to say you don't have an independent recollection of this particular investigation and complaint?



A **That's correct.**
Q Okay. And that would include you don't have independent recollection of your conversations or if you have -- you would've -- I would assume you had a conversation with Mr. Osterbeck, correct?
A **Yes, he was -- that's one of the steps in my investigation would've been to talk to him since he was the accused.**
Q Okay. And your understanding was that he was the accused in this particular investigation, correct?
A **Yes. Based on that memo there.**
Q Okay.
MR. MARTIN: All right. Chris, I have no further questions. I pass the witness at this point.

CROSS EXAMINATION

BY MR. DOYLE:
Q Okay, Mr. Rushing, I do have just a couple follow up questions about that memo we were just discussing.
A **Uh-huh.**
Q So, just to confirm, again, you said you don't have any independent recollection outside of what the memo says about what the basis of the complaint was or what your conversations with Mr. Osterbeck were?
A **Correct.**
Q Okay. So, today you're just, you know, going ba --



going based on what you see in the memo, right?
A **Yes.**
Q Okay.
A **Yes. I didn't recall anything until I was shown the memo or until the memo was mentioned.**
Q Okay. Even after having seen the memo, do you have any recollection of the substance of the harassment complaint?
A **No, I do not.**
Q Okay. So you don't know whether or do you know whether the alleged harassment was based on any discriminatory reason or --
A **I -- I'm not aware of the substance. I don't know what the basis -- what the claims harassment was.**
Q Okay. That's all I have.
MR. MARTIN: That's all I have. Mr. Rushing, thank you.
COURT REPORTER: That concluded, we're off the record at 3:12 p.m. Sorry, go ahead.
(Off the record)
MR. MARTIN: Yeah, Mr. Rushing.
Joe, well, you can put this back on the record.
COURT REPORTER: We're back on the record at 3:12 p.m.

RE-DIRECT EXAMINATION



BY MR. MARTIN:
Q Yeah.
A **I wanted to clarify one thing getting back to one of your questions.**
Q Yeah.
A **You had asked who would be the deciding official --**
Q Yeah.
A **-- for disciplinary, you know. And there's a distinction. I said termination. I corrected myself to say separation. There's a distinction between a probationary termination and a conduct based separation. So I just wanted to say that the termination -- the level of deciding official for a termination is the human resources officer which would've been either at the facility, but at that time after HR monetization, it would've resided with the VISN 10 human resources officer. So it's -- so that it does not -- a probationary termination does not have to go through the director of facility. I just wanted to clarify that.**
Q I understand. Thank you very much.
A **There is distinction between the two.**
Q All right. Thank you very much for that clarification. And one other question, did you have -- do you recall having any conversations with Mr. Gonzalez regarding Mr. Osterbeck?

On Fri, Feb 26, 2021 at 10:26 AM, Tara Miller
<taramiller2005@yahoo.com> wrote:

Good morning, Duty Chief Chester:

Thank you for your assistance, and support regarding this matter.

Regards,

Tara Miller

Sent from Yahoo Mail on Android

On Fri, Feb 26, 2021 at 9:48 AM, Chester, George H.
<George.Chester@va.gov> wrote:

Good morning Mrs. Miller,

As per our conversation, I understand that you will be unavailable and out of town until March 10. I have spoken with Mr. Osterbeck and he is going to clear you with all the departments in the facility except for the police department. Once you return to the facility on March 12, 2021, you are going to come to the police department and turn in all keys that were issued to you and your PIV card. I will then return all personal items that were in the Human Recourses area to you.

At that time the clearance form will be turned in to the Agent Cashier and your final check will be released to you by mail.

If you have any questions, please feel free to email or call me.

George H. Chester Jr.
Deputy Chief of Police
U.S. Department of Veterans Affairs
John D. Dingell Medical Center
Detroit, Michigan
Office: (313) 576-3375
Direct: (313) 576-4818
Cell: (313) 244-7769

-----Original Message-----
From: Osterbeck, Eric J. <Eric.Osterbeck@va.gov>
Sent: Friday, February 26, 2021 7:24 AM
To: Tara Miller <taramiller2005@yahoo.com>
Cc: Kazan, Mohamad I. <Mohamad.Kazan@va.gov>; Chester, George H. <George.Chester@va.gov>; Smith, John F. <John.Smith838b5@va.gov>
Subject: Final SF-50

Tara,

On Wednesday February 24, 2021, at approximately 8:40am you were given the direction to clear the facility using the provided Clearance Form.

You failed to check out at each location on the form and properly turn in your keys to the HR Suite, your PIV card as well as your keys to your cubicle. You were also instructed that once you completed clearing the facility you were to report back to Human Resources and collect your Personal belonging's.

Several attempts to contact you were made both on Wednesday and Thursday via telephone. You did not answer nor call back to speak to either the VA Police department or myself. Your Personal belonging's have been boxed and will be cataloged on Monday March 1, 2021.
As indicated on the Clearance form- your final paycheck may be withheld if you fail to clear properly. Due to your failure to properly clear and return VA items the cost of changing all the locks that you have the keys to may be assessed to you. Your final paycheck will be with the Agent cashier and not Direct deposited.

I strongly urge you to contact the VA Police Department Criminal Investigator George Chester at 313-576-4818 and arrange a time that you can turn in your VA property.

While I can understand this is a difficult time - I hope that you can follow the guidance above and contact the VA Police to close out this issue.

Thank you

Eric J. Osterbeck
Senior Strategic Business Partner
VISN 10 Human Resources
Detroit VA Medical Center
Ph:313-576-3939 | Fax:313-576-1150

Servicing Ohio, Indiana and Michigan
Visit us at
https://gcc01.safelinks.protection.outlook.com/?url=https%3A%2F%2Fwww.visn10.va.gov%2F&data=04%7C01%7C%7C0052d167610742a515cd08d8da516dda%7Ce95f1b23abaf45ee821db7ab251ab3bf%7C0%7C0%7C637499390548394347%7CUnknown%7CTWFpbGZsb3d8eyJWIjoiMC4wLjAwMDAiLCJQIjoiV2luMzIiLCJBTiI6Ik1haWwiLCJXVCI6Mn0%3D%7C1000&sdata=5CpGdAMB7JlEqg3ao7qWnS%2FRQJOYMLrfDgjZd1O0Ew0%3D&reserved=0

How was my service today? We value your feedback - please click on the link to take the Quick Card Survey.

Confidentiality note: This e-mail is intended only for the person to whom is addresses and may contain information that is privileged, confidential, or otherwise protected from disclosure. Dissemination, distribution, or copying of this e-mail or the information herein by anyone other than the intended recipient is prohibited. If you have received this e-mail in error, please notify by reply e-mail and destroy the original message and all copies.