UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TARA D. MILLER,

      Plaintiff,

                                  Case No. 22-12865

v.

                                  Hon. F. Kay Behm

DENIS MCDONOUGH, Secretary,
Department of Veterans' Affairs,

      Defendant.
_____/

## OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 39) AND PLAINTIFF'S MOTION TO AMEND COMPLAINT (ECF NO. 41)

### I.     PROCEDURAL HISTORY

Plaintiff Tara D. Miller filed this action against her former employer, the U. S. Department of Veterans' Affairs, alleging discrimination and retaliation on the basis of race, sex, age, and disability in violation of federal law. Defendant seeks summary judgment on all of Plaintiff's claims and Plaintiff has requested leave to amend her complaint. The court heard oral argument on June 4, 2025, and took the matter under advisement.

## II.    FACTUAL BACKGROUND

In April 2020, Miller was hired as a probationary human resources assistant at the John D. Dingell Medical Center in Detroit, Michigan. Her probationary period was for two years. Miller is African American and was fifty years old when she was hired. She was employed through a noncompetitive process for persons with disabilities, often referred to as "Schedule A."

Miller is a U.S. Army veteran who continues to serve in the reserves. While serving in the military, she was sexually assaulted twice. As a result, she has a service-related psychiatric disability (post-traumatic stress disorder).

Miller was hired by Eric Osterbeck, a senior manager in the human resources department who became her supervisor. Osterbeck was familiar with Schedule A because he was a Schedule A hire; however, he did not know Miller's specific disability.

Plaintiff alleges that soon after she was hired, Osterbeck subjected her to "unwelcome sexual advances and innuendos." Specifically, Plaintiff alleges that at a meeting in his office, Osterbeck invited her to help herself to candy or Rice Krispy treats in his office anytime. He alleged said with a "flirtatious smile," "because around here they call me the Candy Man." Plaintiff alleges this comment

retriggered the trauma of her sexual assaults because, according to her, the "expression 'Candy Man' has a sexual connotation in that 'Candy' refers to a man's 'penis.'" ECF No. 48 at PageID.844; ECF No. 48-7.

Approximately a week later, Osterbeck allegedly "ogled" Plaintiff from her hips to her breast and stated with a "flirtatious grin," "You look nice!" Plaintiff "made sure" he saw a look of "shock and disgust" on her face and she loudly sighed before walking away. ECF No. 48 at PageID.845; ECF No. 48-2 at PageID.884-85 (Decl. of Tara Miller).[1] Plaintiff contends that as a result of her "strong expression of opposition" to Osterbeck's "unwelcome sexual advances," he "decided that Plaintiff had to be fired." *Id.* at PageID.845.

According to Plaintiff, the "first step was to hire someone who Osterbeck believed would 'play his sexual games.'" ECF No. 48-2 at PageID.885. Osterbeck hired Erica Bethany, an African-American woman in her thirties, as a human resources generalist in May 2020. Bethany was not a probationary hire because she had worked for the VA since 2007. Plaintiff contends that "Bethany immediately acceded to his sexual advances, sexual banter and sexual innuendos

---

[1]     Defendant argues that the court should not consider this and other allegations from Plaintiff's declaration that were not mentioned in her deposition. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (holding that a "party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony").

by engaging in flirtatious behavior along with Osterbeck's assistant, Angela Thompson." *Id.* Plaintiff claims this flirtatious behavior continued in meetings in Osterbeck's office, but she was excluded. According to Plaintiff, "[a]nother way they 'played' Osterbeck's sexual games was by spewing the 'F' word and by wearing extremely tight fitting sexually provocative clothing. On one occasion in June 2020, Bethany stated: 'Tara, just play the game.'" ECF No. 48-2 at PageID.886.

Miller and Bethany developed a difficult working relationship. Although Miller found Bethany to be "hostile" toward her, she did not believe this acrimony was discriminatory based upon her race, sex, age, or disability. ECF No. 39-2 at PageID.198-99. In August 2020, Miller wrote a "Report of Contact" memo detailing some of her work-related disputes with Bethany. ECF No. 39-8. In the memo, Miller stated that Bethany "has a very rude, disrespectful disposition. At the present time, I do not want to engage in any form of communication with her." *Id.* Osterbeck testified that he received complaints from both Miller and Bethany because they "did not get along with each other, it gave the appearance that they did not like each other, they were not treating each other with dignity and respect." ECF No. 39-5 at PageID.418.

Defendant contends that Miller also had trouble working with Angela Thompson, an African-American woman close to her age. In January 2021, Miller

asked Osterbeck to arrange a mediation between her and Thompson to address their working relationship and Thompson's "disrespectful comments." ECF No. 39-12. The mediation was arranged by a representative of the EEO department, Zenia Berry, who understood Plaintiff's complaint to be based upon disrespectful comments and being "overly scrutinized by her coworkers." ECF No. 39-13 at Page.ID 646, 652-53. Miller seemed to find the mediation to be helpful, because "we were able to communicate after 6 months of conflict," but she was upset that Osterbeck appeared to support Thompson over her. ECF No. 39-14.

In January 2021, Osterbeck instructed employees to refrain from using "reply all" to respond to mass emails. Shortly thereafter, Plaintiff replied all to a mass email regarding the presidential inauguration. ECF No. 39-15. In response to Osterbeck's email reminding her about email etiquette, Plaintiff wrote a lengthy email defending her response, stating "Mr. Osterbeck, with all due respect to you: it is my understanding that when an electronic communication is sent to a 'said person, or personnel' that out of courtesy the recipient may respond in a professional manner." *Id.* She ended by saying, "My apologies, if I offended you by shar(ing) my voice of approval." *Id.*

Aside from her disputes with her coworkers, Plaintiff also complained about not receiving a COVID-19 bonus. ECF No. 48-15. Bethany and Thompson received

bonuses of $1,000 for volunteering to work the COVID-19 screening desk several times outside of their normal working hours. Although Plaintiff only worked the desk once, she believed she should have also received a bonus. To investigate who received bonuses, Plaintiff accessed Bethany, Thompson, and Osterbeck's electronic personnel folders on January 21, 2021. According to Defendant, Plaintiff had no legitimate work-related reason to access her coworkers' personnel files.

On January 23, 2021, Plaintiff wrote a seven-page, single spaced letter to Dr. Pamela Reeves, who as then head of the Detroit VA, complaining about what she characterized as "harassment, bullying, bias, unfair treatment, and disrespect from Mr. Osterbeck, Angela Thompson, and others." ECF No. 48-15.[2] She also complained about not receiving a COVID-19 bonus. Reeves responded by stating that "during the probationary period I think you should focus on learning the job and paying attention to how your supervisor wants you to perform the job. . . . You should try not to have areas of conflict with your boss. . . . You can only change your actions, not theirs." ECF No. 48-14. Reeves was not in Plaintiff's chain of command, and Osterbeck was not aware that Plaintiff sent this letter.

---

[2]      Objectively, the letter does not describe events that could arguably characterized as discriminatory harassment or bullying, but rather perceived slights, rudeness, and unfairness. ECF No. 48-15.

6

Plaintiff also complained to Cindy Bukowski, a harassment prevention coordinator, about Osterbeck's harassment, stating that he told her that her "thought process differs from everyone in the office," and that she doesn't "follow simple directions, nor do you obey me when I give you instructions; you are in the Army, so what happens when you don't follow orders?" ECF No. 48-14 at PageID.1046. Bukowski apparently forwarded Plaintiff's complaint to Jerald Rushing, a labor relations investigator. Rushing sent an email to Osterbeck on February 2, 2021, indicating that he had received an "allegation of workplace harassment" from Miller and that he would be the investigator and factfinder. ECF No. 48-18.

On January 25, 2021, before he knew about Plaintiff's unauthorized access of personnel files, or Rushing's investigation, Osterbeck recommended her termination. ECF No. 39-16. He noted that she was a probationary employee and gave examples where Plaintiff refused to follow instructions, including the mass email incident. *Id.* He further noted that Plaintiff continued to have "interpersonal issues" with her coworkers. *Id.* Osterbeck's request for disciplinary action was sent to Earl Lee in the labor relations department; ultimately, the request needed the approval of Osterbeck's supervisor, Eric Gonzales.

7

Gonzales was informed of Osterbeck's request to terminate Plaintiff's employment around February 19, 2021. ECF No. 39-18. On February 23, 2021, Angela Thompson told Osterbeck that she was concerned that Plaintiff had accessed her personnel file because she addressed her as "Angela Denise Thompson," and would not have otherwise known her middle name. ECF No. 39-19, 39-20. Osterbeck checked the access log for the personnel file system and found that Plaintiff had accessed several files, including his, Thompson's, and Bethany's. ECF No. 39-20. Osterbeck then informed Gonzales of Plaintiff's activity.

Gonzales considered this a "serious breach of protocol for an employee trusted with access to personnel files." ECF No. 39-18. For this reason and because of Plaintiff's "repeated failure to follow directions," Gonzales "made the decision to terminate Ms. Miller's probationary employment on February 24, 2021." *Id.* Gonzales testified that he was unaware that Miller had made any discrimination complaints prior to her termination. *Id.*

The letter informing Plaintiff of her termination was dated February 19, 2021, and stated that the termination was "due to failure to follow direction." ECF No. 39-17. The letter indicated that Plaintiff's termination was "effective February 24, 2021." *Id.* Osterbeck read the letter to Plaintiff on the morning of February 24,

2021, and asked her to sign it, but she refused. ECF No. 39-5 at PageID.478-79; ECF

No. 39-2 at PageID.278-79.

On March 31, 2021, Plaintiff filed an EEO complaint alleging that she was

sexually harassed and discriminated against based upon her age, race, sex, and

disability. ECF No. 39-21. She received a final agency decision and right-to-sue

letter on August 23, 2022. ECF No. 39-22. Plaintiff filed this action on November

25, 2022, alleging discrimination and harassment in violation of Title VII and the

Age Discrimination in Employment Act.

Part of Plaintiff's claim is that Bethany received more favorable treatment

than she did, as follows:

> being allowed to report for work late 3-4 times per week which
> unfairly increased my workload; (2) being provided the proper
> and complete training required to successfully perform the HR
> duties that Osterbeck repeatedly denied me; (3) allowing
> Bethany and Angela Denise Thompson to wear inappropriate
> sexually provocative cloth[es] in violation of the dress code; (4)
> giving Bethany and Thompson COVID awards, while denying the
> same to me even though I also worked at the COVID screening
> station in July 2020; (5) allowing Bethany and Thompson to be
> hostile, belligerent, and disrespectful to Plaintiff; (6) allowing
> Bethany to be hostile, belligerent, and disrespectful of VA
> patients and VA employes; (7) allowing Bethany to use vulgar
> and profane language in the office including the F word and N
> word.

ECF No. 48-2 (Decl. of Tara Miller).

Plaintiff also alleges that Osterbeck created a "hostile and toxic" work environment, through the following actions:

> (1) failing to inform me of my right to join the union; (2) failing to provide me with the proper training required to successfully perform [my] job duties and responsibilities that he had his assistant Angela Thompson only provide to Bethany; and then refused to allow other knowledgeable HR personnel to assist and provide the training I needed; (3) allowing Bethany to be consistently late for work on a near daily basis in order to give me a heavier work load; (4) falsely accusing me of wrongdoing and of mistreatment of customers; (5) yelling, berating, and belittling [me] for minor errors that were also committed by Bethany and others, and threatening to terminate [my] employment; (6) mocking, demeaning and ridiculing my psychiatric disability by referring to me as "crazy," and repeatedly telling me [I have] "no common sense;" that I lacked the "mental" ability to "complete simple" tasks, "follow simple" directions, that he had "never supervised a person like [me]," and repeatedly telling me, I [was] "skating on thin ice," and constantly reminding [me] that I was a 2-year probationary employee who could be terminated at his discretion. He also[] punished me for exercising rights as a disabled veteran to attend [a] medical appointment; and (7) soliciting customers to file false complaints against me, but Roberta Jenkins and her husband told me they refused to do so.

ECF No. 48-2 at ¶ 26.

Plaintiff testified that she believes that Osterbeck was "trying to get rid of" her because he was "biased" in favor of Bethany, "as it related to her age and non-disability," and in retaliation for her complaints against him, Bethany, and Thompson. ECF No. 39-2 at PageID.281.

III.    **ANALYSIS**

   **A.  Summary Judgment Standard**

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-

moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp.2d 905, 910 (E.D. Mich. 2004). To fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the court

must determine whether a jury could reasonably find that the plaintiff's factual

contentions are true by a preponderance of the evidence. *See id.* at 252–53.

Finally, if the nonmoving party fails to make a sufficient showing on an essential

element of its case for which it carries the burden of proof, the movant is entitled

to summary judgment. *Celotex*, 477 U.S. at 323. The court must construe Rule 56

with due regard not only for the rights of those "asserting claims and defenses

that are adequately based in fact to have those claims and defenses tried to a

jury," but also for the rights of those "opposing such claims and defenses to

demonstrate in the manner provided by the Rule, prior to trial, that the claims

and defenses have no factual basis." *Id.* at 327.

### B. Discrimination Claims

Plaintiff alleges that she was discriminated against based upon her race,

sex, age, and disability, in violation of Title VII of the Civil Rights Act, the Age

Discrimination in Employment Act, and the Rehabilitation Act.[3] Title VII prohibits

discrimination based upon race or sex, 42 U.S.C. § 2000e-2(a)(1), the ADEA

prohibits employers from discriminating against employees "because of" their

---

[3]     In her complaint, Plaintiff labeled her disability claims as arising under Title VII rather than the Rehabilitation Act. After Defendant filed its motion for summary judgment, Plaintiff sought to amend her complaint to clarify that her disability claim arises under the Rehabilitation Act. As discussed below, the court does not believe that an amendment is necessary and will address the merits of Plaintiff's disability claims.

age, 29 U.S.C. § 623(a)(1), and the Rehabilitation Act prohibits disability

discrimination by federally funded entities, "solely by reason of" the plaintiff's

disability. *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023). Because

Miller does not provide direct evidence of discrimination, the court considers

whether she has presented a case based upon circumstantial evidence under the

burden-shifting framework set forth in *McDonnell Douglas*. *See McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).

  To establish a prima facie case of race, sex, or age discrimination, a plaintiff

must show that 1) she is a member of a protected class; 2) she was qualified for

the job; 3) she suffered an adverse employment action; and 4) she was replaced

by a person outside the protected class or was treated less favorably than a

similarly situated individual outside of her protected class. *Laster v. City of*

*Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (race); *Jackson v. VHS Detroit*

*Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) (sex); *Willard v. Huntington*

*Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020) (age).

  To establish a prima facie case of disability discrimination under the

Rehabilitation Act, a plaintiff must show "(1) that he is disabled, (2) that he is

otherwise qualified for the job, with or without reasonable accommodation, (3)

that he suffered an adverse employment action, (4) that his employer knew or

had reason to know of his disability, and (5) that, following the adverse employment action, either he was replaced by a nondisabled person or his position remained open." *Bledsoe v. Tennessee Valley Auth. Bd. of Directors*, 42 F.4th 568, 578 (6th Cir. 2022).

Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment action. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). If the employer does so, the plaintiff must produce evidence that the "proffered reason is a pretext for discrimination." *Id*. "To establish pretext, a plaintiff may show that the defendant's reason '(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 522 (6th Cir. 2021) (citation omitted).

Plaintiff appears to abandon her claims that her termination was based upon her race or sex, focusing on age and disability discrimination.[4] Defendant argues that Plaintiff has not established a prima facie case of any type of discrimination, because she has failed to show that she was replaced by or treated

---

[4]      Plaintiff also does not pursue her claims that she was denied promotions for discriminatory or retaliatory reasons.

less favorably than a similarly situated individual outside of her protected

class(es). Although Plaintiff suggests that she was treated less favorably than

Bethany, Defendant contends that Bethany was not similarly situated to Plaintiff,

in that she was not a probationary employee and did not access others' personnel

files or fail to follow her supervisor's direction. *See Mitchell v. Toledo Hosp.*, 964

F.2d 577, 583 (6th Cir. 1992) ("[T]o be deemed 'similarly-situated', the individuals

with whom the plaintiff seeks to compare his/her treatment must have dealt with

the same supervisor, have been subject to the same standards and have engaged

in the same conduct without such differentiating or mitigating circumstances that

would distinguish their conduct or the employer's treatment of them for it.").

Plaintiff addresses neither this argument nor the elements of a prima facie case in

her response brief, such that the court can only conclude that she has abandoned

each of her discrimination claims. *See Brown v. VHS of Michigan, Inc.*, 545 Fed.

App'x. 368, 372 (6th Cir. 2013) ("[A] plaintiff is deemed to have abandoned a claim

when a plaintiff fails to address it in response to a motion for summary

judgment."); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues

adverted to in a perfunctory manner, unaccompanied by some effort at developed

argumentation, are deemed waived. It is not sufficient for a party to mention a

possible argument in the most skeletal way, leaving the court to . . . put flesh on

16

its bones."). Without an effort at a prima facie showing, Plaintiff cannot sustain her discrimination claims.

Rather than a prima facie case, Plaintiff focuses on pretext. According to Plaintiff, Defendant's "shifting reasons" for her termination demonstrate pretext. *See Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 540 (6th Cir. 2014) ("Shifting justifications over time calls the credibility of those justifications into question.") (citation omitted). Based upon her termination letter, Plaintiff contends that the only reason she was fired was for "failing to follow direction," and that Defendant only learned that she accessed personnel files after she was already terminated. Plaintiff bases her theory on the fact that her termination letter was dated February 19, 2021, but Defendant did not learn that she accessed her coworkers' files until February 23, 2021. Defendant responds that although Gonzales received the request to terminate Plaintiff's employment on February 19, 2021, he did not approve it until after he learned about her unauthorized access of the files on February 23, 2021. ECF No. 39-18. Indeed, Gonzales did not sign the termination letter until February 24, 2021, as evidenced by his digital signature, which is time and date stamped. ECF No. 39-17. Plaintiff also testified that she was terminated on February 24, not February 19. ECF No. 39-2 at PageID.185, 278-79. This undisputed timeline does not support Plaintiff's

argument that the reasons given for her termination were pretextual. Moreover, she does not dispute that she accessed coworkers' personnel files without authorization. A reasonable jury could not find that Defendant's reasons for her termination were pretextual.

Relatedly, Plaintiff argues that Defendant may not rely on the personnel file issue as a legitimate reason for her termination, because Defendant did not learn about the unauthorized access until February 23, 2021, after the date of the February 19 termination letter. Plaintiff contends this is "after-acquired" evidence that Defendant may not use to show its motivation for Plaintiff's termination, but is only relevant to damages. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1168 (6th Cir. 1996) ("Where an employer can show it would have been entitled to terminate the employee for severe wrongdoing, if it had known of the employee's wrongdoing at the time, the employee's remedies for discrimination are limited.") (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 358 (1995)). As discussed above, the evidence is consistent that Gonzales made the final decision and Plaintiff was informed of her termination on February 24, not February 19. As such, Defendant's discovery of Plaintiff's unauthorized personnel file access on February 23 cannot be considered "after-acquired" evidence: it was discovered prior to her termination.

18

### C.  Retaliation Claims

Title VII, the ADEA, and the Rehabilitation Act prohibit an employer from retaliating against an employee for asserting her right to be free from discrimination under those statutes. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d); 29 U.S.C. § 794. To state a prima facie case of retaliation, a plaintiff must allege facts showing that (1) she engaged in protected activity, (2) her employer knew about it, (3) her employer took an adverse employment action against her, and (4) the adverse action was causally related to the protected activity. *Warf v. U.S. Dep't of Veterans Affs.*, 713 F.3d 874, 880 (6th Cir. 2013). The defendant may then rebut the prima facie case by showing a legitimate, nondiscriminatory reason for its actions. *Id.* The burden then shifts to the plaintiff to show pretext. *Id.*; *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (ADEA); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (Rehabilitation Act).

Defendant argues that Plaintiff has not shown that she engaged in protected activity, that her supervisors knew about it, or that her termination was casually connected to the alleged protected activity. Again, Plaintiff fails to address the elements of a prima facie case of retaliation, which alone precludes her claims. *See McPherson v. Kelsey*, 125 F.3d at 995-96.

Protected activity includes "opposition to an apparent Title VII violation," such as "complaining about allegedly unlawful conduct to company management." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012). While Plaintiff complained about hostile coworkers and Osterbeck's favoritism and harassment, she did not complain about being discriminated against or harassed based upon her race, age, sex, or disability. *See* ECF Nos. 39-12, 48-14, 48-15, 48-18. Significantly, there does not appear to be evidence that Osterbeck knew of Plaintiff's alleged opposition to discriminatory practices prior to recommending her termination.[5] And to the extent Osterbeck knew about these complaints, there is no evidence that he considered them in his decision to recommend Plaintiff's termination. *See Wasek*, 682 F.3d at 471-72 (the Sixth Circuit has "repeatedly cautioned against inferring causation based on temporal proximity alone"). Moreover, the decision to terminate Plaintiff's employment was made by Gonzales, who testified that he had no knowledge of Plaintiff's complaints, and there is no contrary evidence suggesting that he did. Further, as

---

[5]    To the extent Plaintiff claims that Osterbeck retaliated against her for "failing to play his sexual games," she has failed to make the connection between her alleged disapproval of Osterbeck's "Candy Man" or "you look nice" comments in April 2020 and her termination in February 2021. Even assuming her nonverbal reactions could be construed as protected activity, Plaintiff does not allege any further sexual or sex-based comments on Osterbeck's part, that he was upset about her reaction, or any other facts that would raise an inference that her termination was causally related to those incidents.

discussed above, Plaintiff has failed to demonstrate that the reasons for her termination were pretextual.

For these reasons, the court concludes that Plaintiff's retaliation claims must be dismissed.

### D. Hostile Work Environment

"A hostile work environment claim requires proof that (1) plaintiff belongs to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on race, [sex, age or disability]; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to take action." *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017); *see also Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996) (age); *Bryant v. McDonough*, 72 F.4th 149, 151 (6th Cir. 2023) (disability).

The alleged harassment "must be both objectively and subjectively severe and pervasive to be actionable." *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 840-41 (6th Cir.), *cert. denied,* 144 S. Ct. 2689 (2024). "Courts consider the totality of circumstances in determining the severity and pervasiveness of alleged harassment, including 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interfere[d] with an employee's performance.'" *Id.* (citation omitted). Allegations of "simple teasing, . . . offhand comments, and isolated incidents (unless extremely serious)" are insufficient. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted).

Plaintiff's allegations of sexual harassment against Osterbeck are generally vague and conclusory. Although she accuses him of "sexual games," "sexual advances," and "sexual innuendo," she fails to provide specific details. Considering the totality of the circumstances, the specific isolated incidents she cites (the "Candy Man" comment and the alleged "ogling") do not meet the objective "severe and pervasive" standard. Although Plaintiff suggests that the law has changed and that she need only allege "some harm" from the harassment, the "severe and pervasive" standard remains a prerequisite to a claim. *See Ogbonna-McGruder*, 91 F.4th at 842 ("[O]ur circuit has repeatedly held that a retaliatory hostile work environment claim must include evidence that the harassment was severe or pervasive."); *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 904 (6th Cir. 2024).

Similarly, Plaintiff's claims that Osterbeck harassed her based upon her disability are unsupported. In her deposition, she said that Osterbeck yelled at her

for not following his instructions not to respond to mass emails: "Don't you know how to follow orders? You can't follow simple instructions?" ECF No. 39-2 at PageID.223. He threatened her job and told her she was "skating on thin ice." *Id.* He said, "If I tell you to do this, then you do that. You don't think like everybody else in the office. Help me to understand . . . your way of thinking." *Id.* at PageID.224. Miller stated that she "was just in disbelief" and "felt it was discriminatory to ask me . . . to compare me to everybody in the office as it relates to my thinking process." *Id.* at PageID.225.

Objectively, this conversation does not qualify as severe and pervasive harassment, nor does it suggest that Osterbeck harbored discriminatory animus based upon Plaintiff's disability. Although Plaintiff attempts to embellish her claim in her declaration by claiming that Osterbeck "mock[ed], demean[ed], and ridicul[ed] my psychiatric disability by referring to me as 'crazy,'" she does not provide sufficient detail to allow the court to assess the totality of the circumstances. Moreover, new allegations in Plaintiff's declaration that were not discussed in Plaintiff's deposition are appropriately disregarded. *Reid*, 790 F.2d at 460.

Plaintiff's other allegations of harassment do not appear connected to any protected characteristic, such as sex, race, age, or disability. Although she alleges

that Thompson and Bethany were "hostile, belligerent, and disrespectful" toward her, she provides no evidence that this hostility was discriminatory, as opposed to a personality conflict. *See Barnett v. Dep't of Veterans Affs.*, 153 F.3d 338, 343 (6th Cir. 1998) (noting that "personal conflict does not equate with discriminatory animus"); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) ("[W]hile Bowman recites a litany of perceived slights and abuses, many of the alleged harassing acts cannot be considered in the hostile environment analysis because Bowman has not shown that the alleged harassment was based upon his status as a male."). Plaintiff herself testified that although her interactions with Bethany were "hostile," they were not discriminatory. ECF No. 39-2 at PageID.198-99, PageID.204. "In Title VII actions . . . it is important to distinguish between harassment and discriminatory harassment in order to 'ensure that Title VII does not become a general civility code.'" *Bowman*, 220 F.3d at 464.

On the whole, Plaintiff's allegations of a hostile work environment are vague, conclusory, or describe events that were not objectively offensive or discriminatory. She falls short of meeting the "relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory." *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017). Accordingly, her hostile work environment claims are subject to dismissal.

### E.  Motion to Amend Complaint

Plaintiff seeks to amend her complaint to clarify that her disability claim is brought pursuant to the Rehabilitation Act, not Title VII. Because Defendant addressed the merits of Plaintiff's disability claim under the Rehabilitation Act, as did the court, the court finds that an amendment is not necessary. Plaintiff's disability claims are being dismissed for failure to meet the standard under the Rehabilitation Act, not because of a pleading error.

### IV.   CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant's motion for summary judgment is **GRANTED** and Plaintiff's motion to amend her complaint is **DENIED.**

**SO ORDERED.**

Dated: June 11, 2025                                  s/F. Kay Behm
                                                                  F. Kay Behm
                                                                  United States District Judge